WILLARD M. STOREY and W. M. STOREY LUMBER CO., INC., Respondents, v. EXCELSIOR SHOOK AND LUMBER CO., INC., and Others, Appellants.

First Department, November 18, 1921.

Injunction — conspiracy to deprive plaintiffs of business, customers and trade connections — when findings as to damages and injunctive relief will be sustained — judgment modified.

In an action to recover damages for unfair competition and for an injunction, it appeared that the defendants, in pursuance of a preconceived design to deprive the plaintiffs of a prosperous business with which the defendants had previously been connected in a confidential relation, had made use of the information acquired by them, in their employment by the plaintiffs, in the solicitation of the trade and business of plaintiffs' customers and lumber producers, and had acquired the business of a large number of plaintiffs' clientele, who by reason of the activities of the defendants declined to continue their trade relations with the plaintiffs, and that in pursuance of their conspiracy the defendants had damaged the plaintiffs in a monetary way.

Held, on all the evidence, that the judgment in favor of the plaintiffs was properly rendered but that it should be modified by reducing the amount of damages awarded to conform to the proof;

That the plaintiffs are entitled to an injunction restraining defendants from stating that the plaintiffs have retired from business or from holding themselves out as the successors of the plaintiffs or from making use of or disclosing any knowledge, information or facts gained or obtained from plaintiffs or from plaintiffs' records; but that the defendants should not be restrained from making any false or misleading reports relating to the plaintiffs or from enticing and encouraging persons with whom plaintiffs had trade relations to institute fictitious and unfounded suits against the plaintiffs, since there was no finding of fact in support thereof.

APPEAL by the defendants, Excelsior Shook and Lumber Co., Inc., and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 26th day of July, 1920, upon the decision of the court rendered after a trial at the New York Special Term.

*Charles Soble,* for the appellants.

*Vincent S. Lippe,* for the respondents.

DOWLING, J.:

The plaintiff Willard M. Storey, trading as W. M. Storey Lumber Co., about January 1, 1905, commenced the business

of buying, manufacturing and selling boxes, shooks and other kinds of lumber, and maintained an office at 150 Nassau street, New York city; by and through his efforts and those of his employees, agents and representatives the W. M. Storey Lumber Co. built up an extensive business throughout the United States, and particularly in and about the city of New York, States of New York, New Jersey, Pennsylvania, North Carolina, South Carolina, Georgia, Maryland, and various other southern lumber producing States, and negotiated and dealt with large numbers of customers and lumber producers, numbering about 700. The names and addresses of the various customers and the names and addresses of the various lumber producers, together with detailed and summarized statements of the kind, type and quality of lumber purchased and sold by them respectively, constituted an original list, collection and compilation strictly confidential and were of great value to said plaintiff in the carrying on and conducting of the business of the plaintiff.

Since the latter part of September, 1913, until on or about the 24th day of August, 1918, the W. M. Storey Lumber Co., Inc., and Willard M. Storey, trading as the W. M. Storey Lumber Co., the plaintiffs herein, engaged and employed the defendant Frederick E. Vossnack as assistant manager in their business hereinbefore described. Vossnack when he entered plaintiffs' employ had no knowledge of the customers and lumber producers engaged in said trade and of the sizes, specifications, prices, credit and other questions and data relating thereto, and his knowledge thereof was gained from and while in the performance of his said duties as assistant manager of said plaintiffs. Between the early part of October, 1913, and the 24th day of August, 1918, the said companies employed the defendant Schaffel who had no knowledge of the box, shook and crating business or of customers and lumber producers engaged in the trade and of the sizes, specifications, prices, credit and other questions and data relating thereto. His knowledge was gained from and while in the performance of his duties as confidential clerk for the plaintiffs. The defendants Vossnack and Schaffel at all times had full and free access to the names and addresses of the customers and lumber producers and other trade data acquired and kept by the plaintiffs.

In the spring of 1918, due to war conditions, the question of selling lumber had grown quite unimportant; it was a question of producing and shipping only; prices were advancing right along and there were government embargoes that prohibited any stock except for government use, and there were twenty people wanting to buy every car of lumber available. Storey was anxious to arrange his business so that he could offer ·his services to the government.  About June 4, 1918, the plaintiff W. M. Storey Lumber Co., Inc., was organized, pursuant to an agreement between plaintiff Willard M. Storey and defendants Vossnack and Schaffel, and it was agreed that the corporation be permitted to enjoy the good will and trade relations established by Willard M. Storey; it was also agreed that the corporation be paid a commission of three per cent upon certain old business retained by Storey and handled by the corporation; Vossnack was made vice-president of the corporation and Schaffel secretary, and both were directors. In June, July and August, 1918, these two conspired to obtain for themselves the plaintiffs' business.  Storey had left New York and gone to Winston-Salem, N. C., where he had interests in a mill and lumber business and where he expected to make some arrangement similar to that made in New York. While south he received a letter from Vossnack about the latter buying out the W. M. Storey Co., Inc.  Storey returned to New York, where Vossnack had been negotiating with Barnett and Gottlieb, but the proposition offered was not accepted by Storey and he again returned to Winston-Salem; he wrote from there to Vossnack:  " I presume I am to understand, not having heard from you, that the negotiations with Barnett and Gottlieb have fallen through."  Becoming suspicious of the cause of the delay in settlement he returned to New York in August, 1918, when he learned that a corporation called the Excelsior Shook and Lumber Co. had been organized between August fifteenth and twentieth by the defendants Vossnack, Schaffel and Barnett.  Vossnack and Schaffel both resigned their positions in plaintiffs' employ by letters dated August 17, 1918, which passed him on his way to New York, having been mailed to Winston-Salem. Thereafter the defendants conducted the same business as that of the plaintiffs in competition with them and by similar

methods. The learned court at Special Term had found that defendants " in pursuance of their preconceived plan, design and scheme to deprive plaintiffs of said business, customers and lumber producers and their trade connections, have made use and are now making use of the information obtained and acquired by them by virtue of said employment by the plaintiffs and which information is contained in and was obtained by the defendants from the books of account and records hereinbefore described, and have been and now are soliciting the trade and business of said customers, lumber producers and others and are visiting, calling upon, writing to, and otherwise communicating with the said customers and lumber producers and soliciting their business and have thereby acquired the business of a large number of customers and lumber producers and have been and are accepting the business of said various customers and lumber producers who solely by reason of defendants' solicitation and representations decline longer to continue their trade relations with the plaintiffs herein."

It has further found that Vossnack and Schaffel, while still in plaintiffs' employ, and subsequent thereto, misappropriated various orders which were received as the property of the plaintiffs and intended for the plaintiffs, and also induced and prevailed upon said customers and lumber dealers to transfer their said orders and lumber business from the plaintiffs to the defendants Vossnack, Schaffel and the Excelsior Shook and Lumber Co., Inc. Also that in furtherance of their conspiracy they falsely represented to various lumber producers and customers with whom plaintiffs had trade relations that the latter had retired from business and had no one in charge of their business in the city of New York and that defendants had acquired the business of the plaintiffs and had become their successors. The offices of the said three defendants are on the same floor with that of plaintiffs at 150 Nassau street. The court has also found that the defendants Vossnack and Schaffel suffered defaults on the plaintiffs' contracts, and then solicited plaintiffs' customers for the new company they had caused to be organized; for their own purposes, the said defendants made use of the plaintiffs' private data, to which they had access by reason of the con-

fidence reposed in them; and they spread through the trade the report that plaintiffs were discontinuing their business and that they were taking it over. In addition to defendants' general course of business in pursuance of their conspiracy to deprive plaintiffs of their business certain specific transactions are made the basis of complaint. These are, briefly stated:

(1) The Lalance & Grosjean transaction:

On July 26, 1918, Lalance & Grosjean Company ordered from W. M. Storey Lumber Company two cars of lumber; defendant Schaffel, then in plaintiffs' employ, did not send the order to the plaintiffs in the south and actually attempted to fill the order on behalf of the newly organized Excelsior Company. After the defendants were out of plaintiffs' employ, Lalance & Grosjean gave plaintiffs a certain length of time to fill the contract and they happened to have two cars of lumber in New York that had been shipped to other people, upon which they would have made a profit. Plaintiffs diverted those two cars paying a higher rate of freight and shipped them to Lalance & Grosjean and thereby lost the profit they would have made by shipping them to the people who originally ordered them, as well as the additional freight thereon. The estimated profit on each car was $228.45, or $456.90 in all and the additional freight paid amounted to $97.30. The trial court awarded judgment for $456.90 against all the defendants, on this item.

While the testimony as to the damage sustained by plaintiffs by reason of the proven unlawful acts of the defendants is confused, the evidence can fairly be held to sustain this recovery.

(2) The Piedmont Wagon Mfg. Co., Inc., transaction:

Plaintiffs had a contract with the Piedmont Wagon Mfg. Co., whereby the latter was to furnish 150,000 feet of North Carolina pine boards, with which they were to supply the requirements of its customers; this contract was about five or six dollars below the market price per 1,000 feet. The Piedmont Company wrote plaintiffs, asking for shipping instructions, at a time when Vossnack and Schaffel were still in plaintiffs' employ. Instead of replying thereto and forwarding shipping instructions as their duties required, they

concealed the receipt of the letter and failed to answer it, as the result of which plaintiffs lost their contract, which was canceled by the Piedmont Company. Defendants then tried to buy the identical lumber from the Piedmont Company. Plaintiffs' loss on this transaction was fixed by the court at $1,200, for which it awarded judgment. While the evidence amply sustains the defendants' liability, the amount thereof cannot exceed $900.

As to items 1 and 2, the court found that the total damage of $1,656.90 was caused by the acts of all the defendants, and, therefore, judgment was given in that sum against the Excelsior Shook and Lumber Company and Arjeh Barnett, as well as the other two defendants.

(3) As to the defendants Vossnack and Schaffel, there is an additional award amounting to $656.15, arising from their misappropriation of that sum under the following circumstances: On or about the 22d day of July, 1918, the plaintiff forwarded to the W. M. Storey Lumber Co., Inc., his personal check for $656.15 payable to the order of the W. M. Storey Lumber Co., Inc., as part commissions due from the plaintiff Willard M. Storey to the W. M. Storey Lumber Co., Inc., pursuant to the agreement between them. No profits had been made or earned by the plaintiff, the W. M. Storey Lumber Co., Inc., during June, July and August while the defendants were in charge of the same. The defendants named notwithstanding, wrongfully, and in bad faith, and in violation of their understanding and agreement with the plaintiffs, and in violation of their duties as officers of the plaintiff corporation, and without any valid authority, withdrew and appropriated the sum of $656.15 to their own use. This recovery is amply supported by the evidence.

Besides the foregoing monetary awards, the judgment herein provides that defendants be enjoined (a) from in any manner directly or indirectly holding themselves out, stating or representing that the plaintiffs Willard M. Storey, trading under the name and style of W. M. Storey Lumber Co. and W. M. Storey Lumber Co., Inc., have retired from business or from asserting that they or either of them are the successor or successors of Willard M. Storey or W. M. Storey Lumber Co., Inc.; (b) from making use of or disclosing to or for any

individual, firm or corporation other than the plaintiffs, any list, compilation or collection of the names of lumber producers or customers, or any knowledge or information, particulars, data or other fact or circumstance gained or obtained from plaintiffs or acquired by said defendants from the said list, compilation, records and collection of plaintiffs; (c) from in any manner making false or misleading statements or reports of, about, relating to or against the plaintiffs or either of them; (d) from in any manner enticing and encouraging any of the plaintiffs' customers or any other persons with whom the plaintiffs had trade relations to institute fictitious, unmeritorious and unfounded suits at law or in equity.

As to the phase of the injunctive relief marked " d " there is no finding of fact which would support it; as to the paragraph marked " c " there is no finding to support it other than an implication from the finding supporting paragraph " a " which is complete and distinct in itself.

The judgment appealed from will, therefore, be modified by reducing the amount of damages awarded against the defendants by $300 and by striking out so much thereof as is set forth in the paragraphs indicated marked " c " and " d " and as so modified it is affirmed, with costs to respondents.

CLARKE, P. J., SMITH, PAGE and GREENBAUM, JJ., concur.

Judgment modified as indicated in opinion and as so modified affirmed, with costs to respondents. Settle order on notice.