HARRY R. DEFLER CORPORATION, Appellant-Respondent, *v.* FRANCIS S. KLEEMAN et al., Respondents, and EDWARD G. SCHNEIDER, JR., et al., Respondents-Appellants.

Fourth Department, November 1, 1963.

*Manly Fleischmann* and *Leonard W. M. Zingler* for appellant-respondent.

*Hetzelt & Watson* (*Joseph L. Watson* of counsel), for respondents-appellants.

*Phillips, Mahoney, Lytle, Yorkey & Letchworth* (*Alexander C. Cordes* of counsel), for respondents.

WILLIAMS, P. J.   This is an action by the plaintiff corporation against two former employees and their wives for an injunction and damages arising from a conspiracy to exploit, in competition with the plaintiff, confidential information necessarily disclosed to them by the plaintiff for purposes of their employment. Joined as a codefendant is a corporation formed by the individual defendants which became the vehicle through which the conspirators operated to divert business from the plaintiff. The relief sought is an accounting for the profits realized at the plaintiff's expense and a permanent injunction against such continued depredations of the plaintiff's business in the future.

Since 1928, the plaintiff and its predecessor have engaged in the business of buying and selling industrial carbons, cokes, charcoal, graphite and other related products. Most of these are by-products, the residue of the manufacture of other products, and are not the principal items produced by the companies supplying plaintiff. Consequently the availability, composition and quality of the items vary according to the production processes of the sources of supply. Over a period exceeding 25 years Harry R. Defler, the founder of plaintiff's predecessor, developed a large number of customers for these various products and compiled a comprehensive catalogue of information in the form of office records. The information contained in these records disclosed the particular needs of the firm's customers and furnished analyses of the materials available from the various industrial producers supplying plaintiff. Since the by-product of one type of production process frequently could not satisfactorily be substituted for that of another process, these records furnished the essential and unique key to doing business in plaintiff's particular manner. Plaintiff's compilation of information was not available to the general public and could not have been duplicated by one who had not had the actual experience of Harry R. Defler. The value of this information was confirmed by the fact that on the death of Harry R. Defler, the assets of the original corporation, consisting primarily of its goodwill, name, outstanding contracts and business records, were sold to a purchaser who was himself familiar with the field, for $250,000. The physical assets of the corporation were of relatively slight value.

The really substantial asset was Defler's property rights in the confidential information so transferred.

The purchaser organized the plaintiff corporation which continued doing business under the same name and in the same manner as in the past. On December 1, 1956 the plaintiff employed the defendant Francis S. Kleeman to serve as its general manager and elected him vice-president. As a necessary part of his employment as general manager, Kleeman, who had no previous experience in the type of business conducted by plaintiff, was furnished with free access to the business records containing all of such confidential information. There can be no question that this information was treated as confidential by the corporation and would not have been available to Kleeman if it were not essential for the performance of his duties as general manager. Kleeman was made aware of this when he entered plaintiff's employ.

Approximately one year after he became associated with the plaintiff, Kleeman hired the defendant Edward G. Schneider, Jr., to work for plaintiff as a salesman. Like Kleeman, Schneider had no previous experience in this particular type of business nor had he any knowledge of plaintiff's methods or of the information contained in its confidential records.

Sometime in the Spring of 1958 Kleeman and Schneider, although still in the plaintiff's employ and in violation of their duty of loyalty to the plaintiff's interests, embarked upon a course of action designed to divert to themselves the very business they had been employed to obtain and retain for the plaintiff. Mrs. Kleeman and Mrs. Schneider knowingly joined in the plan at a meeting in the Kleeman home, at which all four individual defendants were present, when it was agreed that the corporate defendant Carchem Products Corporation would be formed. The certificate of incorporation was executed on May 14, 1958. Thereupon Kleeman and Schneider ceased their efforts on behalf of their employer. Schneider, holding 50% of the stock of the new corporation, became its president, treasurer, chairman of the board and sole salesman. Virginia Kleeman purchased the remaining 50% for $500 with a check drawn on her joint bank account with her husband. She also became comptroller and Patricia Schneider became secretary. Kleeman loaned the corporation $5,000 from his personal bank account, thus providing the working capital which enabled the corporation to commence doing business.

The new corporation proved to be an immediate success. Schneider, who had not been able up to that time to develop any business for the plaintiff suddenly became extremely productive.

He guided the new corporation with such acumen that within two months the $5,000 loan from Kleeman had been repaid in full and the corporation was able to pay a total of $1,750 per month under the guise of salaries to Virginia Kleeman and the Schneiders. At that time Virginia Kleeman worked a total of 10 hours each week. The corporation also paid her a $50 monthly rental for a space in the Kleeman home where the corporation's books were kept.

Unfortunately for the plaintiff, the new corporation's business success was attributable to the fact that it dealt almost exclusively with customers and suppliers of plaintiff. Defendants, during their employment by plaintiff and while disloyal to it, continued to enjoy all of the benefits of their relationship with plaintiff. They freely exploited plaintiff's confidential information as to the identity and particular needs of customers, solicited customers, vouched for Carchem's credit in plaintiff's name and even charged telephone and travel expenses to plaintiff although they were incurred in the interests of Carchem. Their audacity probably reached its peak when they paid, with plaintiff's funds, the legal fees incurred in connection with the incorporation of Carchem. Their conduct was not only reprehensible, but completely astounding.

The defendants' disloyalty continued apace after Schneider was discharged by the plaintiff on September 30, 1958. Kleeman not only acquiesced in Schneider's business transactions with plaintiff's customers and suppliers, in his wife's participation in the affairs of Carchem, and in the deposit of her salary in their joint bank account, but he withheld his knowledge of Schneider's activities from the other officers and directors of plaintiff. In some instances he actively diverted business to Carchem. Moreover, following his resignation from plaintiff's employment on February 25, 1960 he not only continued to divert business from plaintiff to Carchem but he procured business for himself in violation of a reasonable and valid noncompetition provision in his contract of employment.

The customers and suppliers of plaintiff, though perhaps well known in industrial fields, were not readily apparent as customers and suppliers for plaintiff's particular type of business. As we have observed, the information as to the availability of materials and the peculiar needs of plaintiff's customers was derived from the intimate knowledge acquired through years of experience by Defler. Therefore, the defendants by exploiting this information obtained an advantage not available to a stranger seeking to set himself up in fair competition with

plaintiff. The actions of the defendants in this case amounted to a theft not only of customers which the plaintiff had discovered and developed but of the essential tools for serving such customers.

The conclusion is inescapable that the type of business piracy practiced by the defendants amounted to misconduct which the courts have not hesitated to restrain.

It has been well established that an employee, who has had entrusted to him confidential information pertaining to the conduct and clientele of his employer's business which he would not have obtained were it not for his status as a trusted employee and which affords him an advantage over other competitors to whom the information is not available, may not subsequently use that information to further his own ends. (*Town & Country House & Home Serv.* v. *Newbery,* 3 N Y 2d 554; *Duane Jones Co.* v. *Burke,* 306 N. Y. 172; *Kleinfeld* v. *Roburn Agencies,* 270 App. Div. 509; *Storey* v. *Excelsior Shook & Lbr. Co., Inc.,* 198 App. Div. 505; *People's Coat, Apron & Towel Supply Co.* v. *Light,* 171 App. Div. 671, affd. 224 N. Y. 727; *Peerless Pattern Co.* v. *Pictorial Review Co.,* 147 App. Div. 715; *Witkop & Holmes Co.* v. *Boyce,* 61 Misc. 126, affd. 131 App. Div. 922. Cf. *Irving Serwer Adv., Inc.* v. *Salit,* 13 N Y 2d 629; *Humble Oil & Refining Co.* v. *Trenck,* 18 A D 2d 899, revd. on dissenting opinion 13 N Y 2d 707.) This restriction arises because of the confidential nature of the employment relationship and is not dependent upon the presence in the employment agreement of a provision limiting activities after cessation of employment. Thus, as early as the decision in *Witkop & Holmes Co.* v. *Boyce* (*supra*) (a case that has been cited and approved with great frequency) in an action to restrain a former salesman from exploiting his familiarity with plaintiff's customers, it was said (p. 132): "We, therefore, are of the opinion that, independently of any express contract between the parties, equity will restrain the acts of which the plaintiff complains, and which the defendant threatens and claims the right to do. This arises out of a violation of duty, having its origin in the relation of employer and employed, and an implied contract that an employee will not divulge confidential knowledge gained in the course of his employment, or use such information to his employer's prejudice." The equitable principle involved is well and clearly set forth in the *Witkop & Holmes Co.* case (p. 136): "The plaintiff in this case does not seek to restrain the defendant from entering the employment of * * * any other rival concern. It does not complain of his acts in so doing, but it does ask that he be restrained from

interfering with the trade, custom or good-will of the plaintiff, and from making use of the knowledge or information gained from or contained in plaintiff's original list of customers, and from canvassing and soliciting orders from the plaintiff's former customers.'' The courts have even extended this protective doctrine so that a former employee may not accomplish through indirect means, such as revealing the information to a third party, what he may not achieve directly. (*People's Coat, Apron & Towel Supply Co.* v. *Light,* 171 App. Div. 671, affd. 224 N. Y. 727; *Witkop & Holmes Co.* v. *Great Atlantic & Pacific Tea Co.,* 69 Misc. 90.) In such case the injunction may issue against the new employer attempting to use the information as well as against the former employee. (*Ibid.*)

There can be no question that the information which the defendants exploited falls well within the category of data to which protection has traditionally been accorded. '' The principle of law, however, is not confined to secret processes of manufacture or methods of doing business, but has a much wider application * * *. The names of the customers of a business concern whose trade and patronage have been secured by years of business effort and advertising, and the expenditure of time and money, constituting a part of the good-will of a business which enterprise and foresight have built up, should be deemed just as sacred and entitled to the same protection as a secret of compounding some article of manufacture and commerce.'' (*Witkop & Holmes Co.* v. *Boyce, supra,* p. 131.) The factors necessitating the granting of this protection were considered in *People's Coat, Apron & Towel Supply Co.* v. *Light* (*supra,* p. 673): '' The customers largely were individual employees, unadvertised, and reached only by personal contact. There is no evidence that Light had a written list of them. There was in his head what was equivalent. They were on routes, in streets and at numbers revealed to him through his service with plaintiff. Their faces were familiar to him, and their identity known because of such employment. He had entry and introduction and solicited them, not as strangers, but as persons known to him. He used what he had gained through plaintiff to take away its customers. It is idle to say that he did not have the advantage of a knowledge and acquaintance that he would not have had save for his former employment, and it is unimportant that there was some other possible way of discovering and reaching them. It is clear enough what means he used.''

The question of the extent to which protection may be accorded customer lists was thoroughly reviewed in *Town & Country*

*Serv.* v. *Newbery* (3 N Y 2d 554). The criteria which the court relied upon in that case are equally applicable to the present case. It was stated (pp. 559, 560) : '' the plaintiff had obtained a customers list, the names of which ' could only be secured by the expenditure of a large amount of time, effort and money in gathering together such a vast list of consumers who desired to do business in this peculiar way. These customers were not classified as likely customers in any public directory. They were not discoverable by any public display of their willingness to deal' * * * It would be different if these customers had been equally available to appellants and respondent, but, as has been related, these customers had been screened by respondent as considerable effort and expense, without which their receptivity and willingness to do business with this kind of a service organization could not be known.''

Plaintiff is, therefore, entitled to an injunction permanently restraining the defendants from continuing their illegal activities. In addition, plaintiff is entitled to be compensated for the damages which it has sustained as a consequence of the defendants' unlawful acts (*Town & Country Serv.* v. *Newbery, supra*; *Duane Jones Co.* v. *Burke,* 306 N. Y. 172, *supra*; *Electrolux Corp.* v. *Val-Worth, Inc.,* 6 N Y 2d 556).

In cases of this nature an accounting for the profits realized by the defendants resulting from their illegal acts may furnish the most reliable method of computing the loss (see *Biltmore Pub. Co.* v. *Grayson Pub. Corp.,* 272 App. Div. 504; *Dad's Root Beer Co.* v. *Doc's Beverages,* 193 F. 2d 77 [C. A., 2d]). However, in view of the substantial and unnecessary expenses incurred by the defendants in the form of excessive salaries and otherwise, a bare accounting for the defendants' profits may not make the plaintiff whole. The accounting Justice should determine what the plaintiff's margin of net profit would have been if it had retained the business which the defendants diverted (see *Westcott Chuck Co.* v. *Oneida Nat. Chuck Co.,* 199 N. Y. 247; *Santa's Workshop* v. *Sterling,* 2 A D 2d 262). With respect to determining sales which the plaintiff could reasonably have expected to make but for defendants' disloyalties, there is in this case '' a causal relation not wholly unsubstantial and imaginary, between the gains of the aggressor and those diverted from his victim ''. (*Underhill* v. *Schenck,* 238 N. Y. 7, 17.)

In view of the continuing nature of the damage sustained by the plaintiff and the fact that this proceeding is equitable in nature, the period of the accounting should extend to the date of the completion thereof, but without limiting plaintiff's

right to future accountings. (Cf. *Duane Jones Co. v. Burke, supra.*)

An employee whose actions are disloyal to the interests of his employer forfeits his right to compensation for services rendered by him (*Lamdin v. Broadway Surface Adv. Corp.*, 272 N. Y. 133) and if he is paid without knowledge of his disloyalty he may be compelled to return what he has improperly received (*Wechsler v. Bowman*, 285 N. Y. 284; *Johnson v. Quayle & Son Corp.*, 236 App. Div. 351; *Evangelista v. Queens Structure Corp.*, 27 Misc 2d 962; *Palmer v. Pirson*, 4 Misc. 455, affd. 144 N. Y. 654; *Pictorial Films v. Salzburg*, 106 N. Y. S. 2d 626). Therefore, the plaintiff may recover the amount of compensation paid to Kleeman and Schneider subsequent to May 14, 1958, the date on which the certificate of incorporation of Carchem was executed. The defendants rely on *Kleinfeld v. Roburn Agencies* (270 App. Div. 509) in opposing such relief. However, the authorities upon which the court relied in that case dealt exclusively with the question of recovery by the employer of amounts paid an employee under a drawing account, which exceeded commissions actually earned. This differs from the right to recover wages paid in ignorance of an employee's fraudulent conduct.

The defendants should also be required to account for any expenses of Carchem which were improperly charged to the plaintiff, and inasmuch as the defendant Francis S. Kleeman violated the provision in his employment agreement against competing with the plaintiff, directly or indirectly, for a period of three years following the termination of his employment, he should compensate the plaintiff for any damages sustained as the result.

The judgment should be reversed and the matter remitted to the Supreme Court of Erie County for further proceedings in accordance with this opinion.

BASTOW, GOLDMAN, McCLUSKY and HENRY, JJ., concur.

Judgment unanimously reversed on the law and facts, with costs to plaintiff, and matter remitted to Supreme Court of Erie County for further proceedings in accordance with the opinion. Inconsistent findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made. Appeal from order dismissed as academic.