Emilio Nunez, J.
This is an action for a permanent injunction arising from an alleged conspiracy to exploit confidential information necessarily disclosed to two former employees in competition with plaintiffs. Defendants William J. Melnick and Jerome S. Tepper had been plaintiffs’ employees for several years. The complaint was dismissed as against defendants Lee Food Packing Co.; Inc, and Arnold Leibowitz for *673 plaintiffs’ failure to make out a cause of action against them. Defendant King Poultry Co., Inc. became the vehicle through which the individual defendants have been conducting their business in competition with plaintiffs. Defendant Sam Leibowitz has provided the capital which made it possible for the two former employees to go into business in competition with plaintiffs.
Plaintiffs have for many years conducted a substantial wholesale poultry business in the City of New York. They sell poultry parts and poultry products to food stores, butcher stores, supermarkets, other wholesalers, and so forth. Defendants Melnick and Tepper were for many years employed as salesmen for plaintiffs at a substantial salary. Most of the selling was done on the telephone from plaintiffs’ office, but on frequent occasions the two men would also personally visit the customers, with the result that each salesman was personally well acquainted with each and every customer.
The gravamen of plaintiffs’ complaint is that defendants Melnick and Tepper, in violation of their trust as employees, have wrongfully taken lists of plaintiffs’ customers and confidential information consisting of names, addresses and telephone numbers of plaintiffs’ customers, the names of the buyer of each customer, the days of the week on which customers were to be called for orders, the precise items of merchandise used by each customer, the precise prices charged to each customer for each item of merchandise, and in certain instances the home telephone number of important buyers.
The evidence establishes that for approximately a year and a half before the relationship between them and the plaintiffs was terminated, Melnick and Tepper contemplated going into business for themselves. They claimed to have the know-how and the customers but they lacked capital. For this purpose they sought to interest a Mr. Sol Soltiel. Several conferences were held by Melnick, Tepper and Soltiel, but they were unable to reach agreement, with the result that when Soltiel was satisfied that he could not do business with Melnick and Tepper, he disclosed his prior secret negotiations with Melnick and Tepper to plaintiffs. After they broke off negotiations with Soltiel I find that Melnick and Tepper started negotiations with defendant Sam Leibowitz, which negotiations led to the formation of defendant King Poultry Co., Inc. Soltiel made his disclosure to plaintiffs on or about January 20, 1964. On the same date Mr. Robert I. Englar, president of one of the plaintiffs, and vice-president of the other, confronted Melnick and Tepper with the charge that they had been planning to go *674 in business for themselves. He interviewed the two defendants separately. Tepper said that they contemplated going into business for themselves but no papers had been signed, and in effect admitted that he and Melnick were about to go into business in competition with plaintiffs. Melnick, on the other hand, denied that they contemplated any such action, and stated that they were ill-founded rumors without foundation. Englar dismissed them on the spot, however, on January 20, 1964.
It appears from the evidence, and I find that Melnick and Tepper had planned to inaugurate their new business on February 3, 1964, but in view of the discovery of their intentions by plaintiffs, and their immediate discharge, they advanced the date of their opening to January 27,1964.
It appears from the evidence and I find that defendant King Poultry Co., Inc. at the time of trial was serving in whole or in part a substantial number of customers previously serviced by the plaintiffs. The evidence shows and I find that defendants Tepper and Melnick had available for their inspection, and had complete access to all names and addresses of plaintiffs’ customers, and that their access was not limited to the customers served by them.
It appears from the evidence and I find that each salesman had a black book containing the list of customers serviced by him, and that this book contained not only the name and address of a customer, but the name of the buyer, the day of the week the orders were placed, the particular merchandise sold to each customer, the markup in price and other valuable information. It appears, however, and I find that it is customary in the poultry business that each salesman carries his own book containing the list of the customers that he services from one employer to the other, and indeed, it appears in this case that both Tepper and Melnick had such a book containing customers’ lists when they went to work for plaintiffs, and they solicited their previous customers, some of whom became the customers of plaintiffs as a result of such solicitation. There was disputed testimony as to who purchased each of the books kept by Melnick and Tepper, but I do not believe it is necessary for me to make a finding on that score. It certainly will make no difference in my determination whether plaintiffs paid for the black book or whether each defendant paid for his own. What I do find is that each defendant brought his own black book at the time he came to work for plaintiffs; that each defendant took this book with him when he left on January 20, 1964, and that this was the practice followed in *675 this business, and I find that they had a right to take these books with them when they left. Indeed, they took them with the knowledge of Mr. Englar, who raised no objection thereto.
I find, however, that besides soliciting the customers serviced by them, the defendants solicited most if not all the other customers of plaintiffs. While there is no direct evidence to that effect, the conclusion is inescapable that they made a list of all of plaintiffs’ customers before they were discharged, and that they utilized the information concerning these customers to their advantage, and for the purpose of soliciting and obtaining their business. In so doing, I believe and I find that they transgressed the bounds of proper competition and that they had no right to do it. While we may not say that the customers for poultry products constitute a secret, I do believe that the information which I have outlined above, including the peculiar needs of plaintiffs’ customers, and precise merchandise, markup, etc., was derived from the intimate knowledge of plaintiffs’ business by the two former employees. I find that the defendants exploited this information, and thus obtained an advantage not available to a stranger seeking to set himself up in fair competition with plaintiffs.
I find that plaintiffs were well aware of the practice of salesmen in their business soliciting the customers serviced by them when they changed their employment. Indeed, the testimony establishes that plaintiffs have been both beneficiaries and victims of this practice. In the light of such knowledge I must conclude that plaintiffs foresaw what their salesmen might do at any time and by failing to exact a restrictive covenant against .such action waived whatever right they might have to injunctive relief with regard to the customers serviced by Melnick and Tepper.
However, with regard to the customers not serviced by Mel-nick and Tepper I find that defendants’ actions amounted to misconduct which should be restrained by a court of equity.
It has been well established that an employee who has had entrusted to him confidential information pertaining to the conduct and clientele of his employer’s business which he would not have obtained were it not for his status as a trusted employee, and which affords him an advantage over competitors to whom the information is not available, may not subsequently use that information to further his own ends. (Town & Country Serv. v. Newbery, 3 N Y 2d 554; Duane Jones Co. v. Burke, 306 N. Y. 172; Kleinfeld v. Roburn Agencies, 270 App. Div. 509; Storey v. Excelsior Shook & Lbr. Co., 198 App. Div. 505; People’s Coat, Apron & Towel Supply Co. v. Light, *676 171 App. Div. 671, affd. 224 N. Y. 727; Peerless Pattern Co. v. Pictorial Review Co., 147 App. Div. 715; Witkop & Holmes Co. v. Boyce, 61 Misc. 126, affd. 131 App. Div. 922. Cf. Serwer Adv. v. Salit, 13 N Y 2d 629; Humble Oil & Refining Co. v. Trenck, 18 A D 2d 899, revd. on dissenting opn. 13 N Y 2d 707; Defler Corp. v. Kleeman, 19 A D 2d 396.) This restriction arises because of the confidential nature of the employment relationship and is not dependent upon the presence in the employment agreement of a provision limiting activities after cessation of employment. Thus, as early as the decision in Witkop & Holmes Co. v. Boyce (61 Misc. 126, 132, affd. 131 App. Div. 922, supra) (a case that has been cited and approved with great frequency) in an action to restrain a former salesman from exploiting his familiarity with plaintiff’s customers, it was said: “We, therefore, are of the opinion that, independently of any express contract between the parties, equity will restrain the acts of which the plaintiff complains, and which the defendant threatens and claims the right to do. This arises out of a violation of duty, having its origin in the relation of employer and employed, and an implied contract that an employee will not divulge confidential knowledge gained in the course of his employment, or use such information to his employer’s prejudice.” The equitable principle involved is well and clearly set forth in the Witkop & Holmes Co. case (supra, p. 136): “ The plaintiff in this case does not seek to restrain the defendant from entering the employment of * * * any other rival concern. It does not complain of his acts in so doing, but it does ask that he be restrained from interfering with the trade, custom, or good-will of the plaintiff, and from making use of the knowledge or information gained from or contained in plaintiff’s original list of customers, and from canvassing and soliciting orders from the plaintiff’s former customers.”
There can be no question that the information which the defendants exploited falls well within the category of data to which protection has traditionally been accorded.
“ The principle of law, however, is not confined to secret processes of manufacture or methods of doing business, but has a much wider application * * *. The names of the customers of a business concern whose trade and patronage have been secured by years of business effort and advertising, and the expenditure of time and money, constituting a part of the good-will of a business which enterprise and foresight have built up, should be deemed just as sacred and entitled to the same protection as a secret of compounding some article *677 of manufacture and commerce.” (Witkop & Holmes Co. v. Boyce, supra, p. 131.)
The defendants will be restrained from soliciting or serving any person, firm or corporation who was plaintiffs’ customer on January 20, 1964, or at any time for 60 days prior thereto, except those customers who were regularly serviced by defendants Melnick and Tepper while in plaintiffs’ employ. Plaintiffs are therefore entitled to an injunction permanently restraining the defendants from continuing their illegal activities to the extent heretofore indicated. By stipulation the issue of damages, if any, was reserved for later adjudication. Counsel will please submit decree in accordance with the foregoing. The parties should be able to agree on the complete list of the customers serviced by Tepper and Melnick, and plaintiffs’ customers who were not so serviced, but in the event they are unable to do so, the court will take up with counsel the question of determining this issue. No costs are awarded either party.