269 N.J. Super. 107 (1993)
634 A.2d 1034
SIMULATION SYSTEMS TECHNOLOGIES, INC., PLAINTIFF-APPELLANT,
v.
DAVID OLDHAM AND EAST COAST TECHNOLOGIES, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 21, 1993.
Decided November 3, 1993.
*108 Before Judges PRESSLER, BROCHIN and KLEINER.
Levenson, Vogdes, Nathanson, Cohen & Obringer, Attorneys for appellant (Arthur J. Cohen, on the brief).
Laskin & Botcheos, attorneys for respondents (George J. Botcheos, on the brief).
The opinion of the court was delivered by BROCHIN, J.A.D.
Following a bench trial in this unfair competition suit, the court found that defendants David Oldham and East Coast Technologies, Inc., his wholly owned corporation, had garnered gross receipts of $1711 as the result of his unfair competition with his former employer, plaintiff Simulation Systems Technologies, Inc. On the basis of that finding, the court entered judgment against defendants for $1711 plus costs of suit. After denial of its motion for reconsideration of the amount of the judgment, plaintiff appealed, contending that it was entitled to an award of damages measured by the salary, bonus, and fringe benefits that it had paid to defendant Oldham during the period of his disloyalty. Defendants have not cross-appealed.
The plaintiff corporation performs systems analysis and computer programming for business clients. Defendant David Oldham is a computer engineer who worked for plaintiff from April 1988 until March 5, 1991, at a salary of approximately $40,000 a year plus fringe benefits.
On April 6, 1990, while still employed by plaintiff, defendant formed defendant East Coast Technologies, Inc. to offer computer-related services in competition with his employer. In the summer of 1990, he arranged to have an advertisement for East *109 Coast Technologies, Inc. published in the local telephone yellow pages, and the advertisement appeared in November 1990. Between August 1, 1990 and March 5, 1991, his corporation sold services competitive with plaintiff's to four customers, at least one of which was or had been plaintiff's customer, for total billings which the court determined amounted to $787.50; following the termination of his employment, he billed $924 for work which he performed for a client to whom he had been introduced while he was employed by plaintiff. In addition, between approximately April 1990 and March 5, 1991, he unsuccessfully solicited business from three other potential customers and received inquiries from at least one more.
On February 27, 1991, a fax directed to Mr. Oldham arrived at the offices of Simulation Systems Technologies, Inc. while Mr. Oldham was out of the building. The fax inquired about computer programming services for a customer about whom plaintiff's management knew nothing. The next day, one of plaintiff's owners asked Mr. Oldham about the message. His answers were evasive and obviously dissembling. By a telephone call to the author of the fax, plaintiff's president learned that he had seen East Coast Technologies, Inc.'s advertisement and had received a proposal for its computer programming services. Mr. Oldham was asked to explain, and he resigned a few days later.
When these facts had been established by the evidence presented at trial, the court concluded that although Oldham's preparations to compete with his employer were legal, his actual competition while still employed was actionable. Injunctive relief, however, was denied as unnecessary and inappropriate. Plaintiff does not dispute that conclusion. The court also ruled that plaintiff was not entitled to punitive damages. Although a point heading of plaintiff's appellate brief refers to that holding, no argument has been presented directed to the punitive damage issue. In any event, the record in this case amply supports the trial court's discretionary determination that punitive damages were not warranted. The trial court's conclusion that plaintiff was not entitled *110 to recover compensation that it had paid to Oldham is the only ruling challenged on appeal.
According to the judge's oral opinion delivered at the conclusion of the trial, he was of the view that, in an appropriate case, consequential damages can include the salary that has been paid to a faithless employee who has "used all of his boss's time for his [own] business." However, in the present case, the court found that the
proofs as to how many specific hours [Oldham] was away from his job and at the same time doing something for his own personal benefit ... are not existent ... [and] the proofs are clear that the defendant worked for the plaintiff during this period of time. Are we to say he's not going to get paid for it?
Following a hearing on plaintiff's motion for reconsideration, the trial court reiterated its ruling. The court concluded, first, that New Jersey law did not recognize recovery of the compensation paid to a disloyal employee as an appropriate measure of damages and, secondly, that plaintiff's proofs did not adequately delineate the time periods during which Oldham was guilty of faithless conduct and the compensation properly attributable to those periods.
In support of the measure of damages that plaintiff seeks, it relies on Restatement (Second) of Agency, §§ 456 and 469 (1957), and on cases from jurisdictions other than New Jersey, particularly Jet Courier Serv., Inc. v. Mulei, 771 P.2d 486 (Colo. 1989). For the following reasons, we are of the view that these authorities do not warrant the relief that plaintiff asks for.
Section 469 of the Restatement (Second) of Agency states:
An agent[1] is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a wilful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned. (Emphasis added.)
*111 Considered alone, this Section appears to support plaintiff's argument. But to understand the meaning which Section 469 is intended to convey, it has to be read in the light of other relevant sections and the pertinent comments. Comment b to Section 469 clarifies the text as follows:
A serious violation of a duty of loyalty or seriously disobedient conduct is a wilful and deliberate breach of the contract of service by the agent, and, in accordance with the rule stated in Section 456, the agent thereby loses his right to obtain compensation for prior services, compensation for which has not been apportioned. [Emphasis added.]
Section 456 reads:
If a principal properly discharges an agent for breach of contract ... the principal is subject to liability to pay to the agent, with a deduction for the loss caused the principal by the breach of contract:
(a) the agreed compensation for services properly rendered for which the compensation is apportioned in the contract, whether or not the agent's breach is wilful and deliberate.... [Emphasis added.]
Comment a to Section 456 states that this section is "a special application of the rules stated in the Restatement of Contracts as to the rights of a contracting party who is in default. See especially § 357." An illustration accompanying Section 357 of Restatement of Contracts demonstrates that when an employee has contracted to be paid periodically, e.g. by the week or by the month, his periodic salary is "apportioned" to the services which he performs during the period. Restatement of Contracts, § 357 subsection 1, illustration 4 (1932). Comment b to Section 456 of Restatement (Second) of Agency treats "apportioned services" as follows:
If an agent is paid a salary apportioned to periods of time, or compensation apportioned to the completion of specified items of work, he is entitled to receive the stipulated compensation for periods or items properly completed before his renunciation or discharge. This is true even if, because of unfaithfulness or insubordination, the agent forfeits his compensation for subsequent periods or times.
The conclusion to be drawn from all of this is that if we assume Sections 456 and 469 accurately state New Jersey law, they support the trial judge's refusal in the present case to apply the measure of damages sought by plaintiffs. The record is ambiguous about whether defendant Oldham was paid biweekly or semi-monthly. *112 Under the Restatement sections cited above, plaintiff would be entitled to recover compensation which was paid to defendant for half-month or two-week periods during which he committed acts of disloyalty. As the trial judge correctly pointed out, Oldham's preparations for future competition with his employer were not inconsistent with his employment obligations and therefore were not "disloyal" in a legal sense. Cf. Auxton Computer Enterprises, Inc. v. Parker, 174 N.J. Super. 418, 423, 416 A.2d 952 (App.Div. 1980) ("An employee who is not bound by a covenant not to compete after the termination of employment, and in the absence of any breach of trust, may anticipate the future termination of his employment and, while still employed, make arrangements for some new employment by a competitor or the establishment of his own business in competition with his employer.") His acts during his employment that were in violation of his legal duty were his sales and attempted sales of services competitive with plaintiff's. According to the cited sections of the Restatement (Second) of Agency, plaintiff was entitled to recover compensation paid to defendant Oldham for those specific two-week or half-month periods during which he committed his disloyal acts. But the trial court is correct that the record is totally devoid of evidence which pinpoints the pay period in which each disloyal act was committed and of evidence that shows the amount of compensation apportioned to that period. Accordingly, the trial record does not support the theory of recovery which plaintiff espouses. It is therefore unnecessary for us to decide in the present case whether, if we were presented with the appropriate proofs, we would hold that the Restatement (Second) of Agency, §§ 456 and 469, accurately state New Jersey law.
Jet Courier, supra, 771 P.2d 486, a case upon which plaintiff principally relies, is entirely consistent with the trial court's ruling in the present case. In Jet Courier Service, the disloyal employee was hired as the vice-president and general manager of an air courier service for its Western Zone operations. Id. at 490. He began preparations in February 1983 to set up a competing business which was to become operational in March 1983. Ibid. *113 While still employed, he arranged to have his employers' customers and substantially all of its Western Zone staff transfer their business and employment to his new company. Id. at 490-91. With respect to the employee's claim for unpaid compensation, the court said:
[I]f on retrial the trial court concludes that [the employee] breached his duty of loyalty to [his employer], then [he] would be entitled to compensation for services properly performed during periods in which no such breach occurred and for which compensation is apportioned in the employment agreement. Moreover, under this apportionment approach, [the employee] would not be entitled to any salary compensation for any month during which he engaged in acts breaching his duty of loyalty nor would he be entitled to any bonus payments for any quarter during which he engaged in acts breaching his duty of loyalty.

Id. at 500.
The other out-of-state cases on which plaintiff relies also fail to show that the facts of the present case entitle plaintiff to reimbursement for the compensation which it has paid to Oldham. For example, in SHV Coal, Inc. v. Continental Grain Co., 376 Pa.Super. 241, 545 A.2d 917 (1988), rev'd, 526 Pa. 489, 587 A.2d 702 (1991), the disloyal employee whose compensation was at issue became sales manager for the northeastern regional office of an international firm. Shortly after assignment to that position, while negotiating a contract on behalf of his employer to supply a product to one of its longstanding customers, he misrepresented his employer's plans and thereby diverted the customer's business to a competitor which he had secretly agreed to join. Id., 545 A.2d at 919-20. The trial court determined that the employee's disloyalty had commenced April 6, 1983, and that the employer was therefore entitled to recover the salary and expenses paid to the disloyal employee for the period from April 6 to April 15, 1983. Id. at 924. On appeal, the employer sought to recover compensation paid for approximately an additional month, but the appellate court affirmed the trial court's finding and conclusion on this issue. Id. at 926. Far from aiding plaintiff Simulation Systems Technologies, Inc., this case illustrates the specificity of the proofs required to justify denying compensation to a disloyal employee.
*114 In Harry R. Defler Corp. v. Kleeman, 19 A.D.2d 396, 243 N.Y.S.2d 930 (1963), appeal dismissed, 13 N.Y.2d 1174, 248 N.Y.S.2d 53, 197 N.E.2d 540 (1964), aff'd, 19 N.Y.2d 694, 278 N.Y.S.2d 883, 225 N.E.2d 569 (N.Y. 1967), the disloyal employees were the corporate employer's vice-president and general manager as well as a salesman. Id., 243 N.Y.S.2d at 933. The business of the corporation was entirely dependent on proprietary information which it had accumulated over a long period of time. Ibid. The two disloyal employees embarked upon a course of action designed to divert this business to themselves. Ibid. According to the court's opinion, they "ceased their efforts on behalf of their employer" on May 14, 1958, but they continued in its employ, utilized its confidential files and its credit for the benefit of their competing business, and charged their employer for telephone, travel and legal expenses incurred for their new venture. Id. at 933-34. Therefore, in addition to an injunction and an accounting for profits, the plaintiff was awarded the amount of compensation which it had paid to the two disloyal employees subsequent to May 14, 1958. Id. at 938. Again, Defler, supra, illustrates the evidence that is lacking in the present case i.e., there is no proof in the record before us of any period prior to Oldham's resignation when he ceased his efforts on behalf of his employer.
In Chelsea Indus., Inc. v. Gaffney, 389 Mass. 1, 449 N.E.2d 320 (1983), four disloyal employees participated in a joint venture to set up a competing business. One of the disloyal employees was the president and general manager of one of the corporate employer's operating divisions, with complete responsibility for all of its operations, subject only to the corporation's limited supervision; another was the division's vice-president for research, development, and engineering, in charge of its laboratory and responsible for its plant layout, machine design, product development, quality control and specification of raw materials; the third was a vice-president for manufacturing, responsible for production at the division's plants in the United States; and the fourth was its shoe industry sales manager and vice-president in charge of domestic shoe sales. Id., 449 N.E.2d at 322. For the benefit of the new *115 business which they were establishing, they diverted their employer's funds, utilized its customer list, traveled to its European facilities at their employer's expense to inspect and photograph its plans and equipment, and for more than two years they used work time for which they were compensated by their employer, injured their employer by hiring and failing to hire employees, and planned to quit their positions simultaneously. Id. at 323-25. In the light of these derelictions, the court said, "For such breaches, the defendants can be required to forfeit the right of compensation even absent a showing of actual injury to the employer," unless the employees proved the value of their services to their employer. Id. at 327 (citing Quinn v. Burton, 195 Mass. 277, 81 N.E. 257 (1907) (emphasis added).[2]
New Jersey law on plaintiff's right to recover compensation paid to plaintiff under the circumstances of this case is stated by Joseph Toker, Inc. v. Cohen, 67 N.J. Super. 68, 81-82, 169 A.2d 838 (App.Div. 1961) (citations omitted):
There is no doubt that an employer may recover in damages for his employee's breach of duty of loyalty. Moreover, upon a showing of actual injury, compensation may justifiably be withheld by the employer because of the employee's disloyalty. This is not, however, the equivalent of a suit for repayment of compensation advanced, as not earned in accordance with the contract. In the absence of fraud, duress, mistake, or express or implied agreement to the contrary, a voluntary payment of wages may not be recovered from an employee, even though the latter's conduct subsequent to receipt of the payments would have disentitled him to receive them.... [N]o similar showing was attempted by *116 plaintiff herein, merely an effort to demonstrate that [the employee], in addition to continuing to perform his duties as [the employer's] general manager, was conspiring to form and did later form a rival corporation, expended company money for a staff dinner at which the proposed rival corporation was discussed, and sold a company truck for the purpose of later acquiring it for his new corporation.
The foregoing acts, at most, might bolster an independent claim to recover the plaintiff's damages, if any, consequent thereon; they do not aid [the employer's] effort to recover salary paid to the defendant under his employment contract.
All of the out-of-state cases on which plaintiff relies deal with employees or other agents whose positions were far more responsible, whose duties were far more critical to their employers' or principals' businesses, and whose misconduct was far more pervasive and reprehensible than Oldham's. We are content to wait until we are presented with a case comparable to those before deciding whether the forfeiture rule which plaintiff enunciates is consistent with Joseph Toker, Inc., supra, or, if not, should be adopted in its stead.
The judgment appealed from is affirmed.
NOTES
[1] "Agent" as used in the Restatement generally includes "employee." Id. at § 2.
[2] Plaintiff cited two other out-of-state cases in support of its damage theory, Hassett v. Ganz (In re O.P.M. Leasing Serv., Inc.), 21 B.R. 986 (Bankr.S.D.N.Y. 1982), and Heyman v. Kline, 344 F. Supp. 1110 (D.Conn. 1970), rev'd, 456 F.2d 123 (2d Cir.), cert. denied, 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972). In O.P.M. Leasing, the bankruptcy judge denied a motion by a former employee of the debtor to dismiss the trustee's complaint which sought reimbursement of the employee's compensation on the ground that the complaint failed to state a claim for which relief could be granted. The complaint is not described in sufficient detail to reveal whether the ruling implies a view of the law which would support plaintiff's damage theory in the present case. In Heyman, supra, the employee's actions were grossly treacherous and fraudulent. The opinion distinguishes Joseph Toker, Inc. v. Cohen, 67 N.J. Super. 68, 80-82, 169 A.2d 838 (App.Div. 1961) on that ground. Heyman, supra, 344 F. Supp. at 1114.