■ PARK ELECTROCHEMICAL CORPORATION, Appellant, v. DAVID KEND et al., Respondents.—

No opinion. Latham, Brennan and Benjamin, JJ., concur; Hopkins, Acting P. J., dissents and votes to reverse the judgment, to grant plaintiff an injunction and an accounting for violation of defendant Kend's covenant against disclosure of trade secrets, etc., and to dismiss said defendant's counterclaim, with the following memorandum, in which Christ, J., concurs: Plaintiff corporation is engaged in the manufacture of both functional and decorative nameplates. Defendant Kend was president of plaintiff until his

resignation in 1966. At the time of his resignation he and plaintiff entered into an agreement which provided (1) for his retention for three years as a consultant and advisor, and payment by plaintiff for these services of a lump sum of $50,000 in eight installments, (2) that he was otherwise free to devote his time to other business activities, (3) that he would not, directly or indirectly, during the three-year period be interested as employee in any business which involved the manufacture of metal nameplates and decorative trim sold to markets served by plaintiff and (4) that he would not divulge any trade secrets or customer lists or other information of a confidential nature relating to plaintiff.[1] Plaintiff brought this action in 1967 for injunctive relief and an accounting on the theory that Kend had violated the agreement by both engaging in a business competitive with plaintiff and disclosing and using customer lists and information confidential to plaintiff. Defendant Dura-Process was joined in the action on the theory that it employed Kend and used the confidential information disclosed, knowing of the agreement between Kend and plaintiff. Kend counterclaimed for recovery of the sum of $40,000 remaining unpaid by plaintiff under the agreement for his services. Special Term dismissed the complaint and granted recovery under the counterclaim. That determination was based on a finding that the covenants were not violated by Kend. I cannot agree wholly with Special Term. Kend was employed by Dura-Process for the purpose of selling its products, consisting of plastic nameplates and decorative trim. There was testimony before Special Term which it could credit that plastic nameplates were not included under Kend's covenant relating to "metal" nameplates. Dura-Process had developed a process of metallizing a plastic nameplate by coating it with a polyester film to which minute particles of metal are added. Plaintiff argues that this process results in a nameplate so similar to a metal nameplate that the two cannot be readily distinguished. Nonetheless, the covenant's language must be strictly construed against plaintiff (*Heller* v. *Pope,* 250 N. Y. 132, 135), particularly since a covenant in restraint of trade is the subject in controversy (cf. 5 Williston, Contracts [rev. ed.], § 1636, pp. 4580-4583). Hence, I do not differ with Special Term's finding that the covenant directed toward Kend's engagement in a competitive business was not violated. But the same considerations do not apply to the covenant prohibiting the disclosure of customer lists and confidential information. Here the covenant is direct and unmistakable: "Kend will not divulge any trade secrets, shop secrets, customer lists, processes, inventions, cost data, specifications, secret methods, formulas, manufacturing methods or other information of a confidential nature relating to Park or any of its subsidiaries or divisions." Thus, the covenant is not limited in operative scope to metal nameplates; it concerns all such material "relating" to plaintiff. The proof is clear that Kend solicited customers of plaintiff and used the information which he had acquired as president of plaintiff in competing with plaintiff. Even without a covenant, such a practice has been condemned (*Town & Country House & Home Serv.* v. *Newbery,* 3 N Y 2d 554, 558). Quite plainly, Kend advanced his own interests by taking advantage of information which either he or Dura-Process would not have known except through his employment by plaintiff; and his conduct should not be condoned (*Scientific Mgt. Inst.* v. *Mirrer,* 27 A D 2d 845, 846; cf. *Humble Oil & Refining Co.* v. *Trenck,* 13 N Y 2d 707; *Barnard Bakeshops* v. *Dirig,* 173 Misc. 862; note, 29 Col. L. Rev. 347). "If it is rightful to protect

1. There was other consideration flowing to Kend for the agreement arising out of the registration of plaintiff's shares of capital stock and the payment of the amount earned by Kend under plaintiff's profit sharing plan.

a business when it is purchased it should be lawful to protect an established business from injury by an employee, unless circumstances of great hardship exist. The ultimate question should be the same in both cases,—what is necessary for the protection of the promissee's rights and is not injurious to the public" (5 Williston, Contracts [rev. ed.], § 1643, p. 4608). · Kend was more than a salesman for plaintiff. He had been a stockholder, officer and director since the time of its incorporation. He was its president and chief operating officer. In an important sense, the agreement made by him with plaintiff contemplated a sale of his interest in plaintiff, since the registration of its stock was intended to facilitate Kend's later disposition of his stock-holdings.[2] Thus, it is reasonable that he should be held to even the more stringent standard applicable to restrictive covenants springing from the sale of a business (see *Purchasing Assoc.* v. *Weitz,* 13 N Y 2d 267, 271-273). In view of the major benefits coming to Kend as an outcome of the transaction, the inference is irresistible that plaintiff bargained for, and obtained, a promise that Kend would not use its customer lists and confidential information to promote an enterprise which would injure its business. · It is not of moment that no customer list per se was maintained by plaintiff (*People's Coat, Apron & Towel Supply Co.* v. *Light,* 171 App. Div. 671). It is enough that the customers' names and addresses on its books were not available to the trade and were indelibly imprinted in Kend's memory, as the chief operating officer of plaintiff. In addition, Kend must certainly have used his knowledge of the personnel and operating procedures of the customers with whom plaintiff did business — information plainly confidential to plaintiff (cf. *Bates Chevrolet Corp.* v. *Haven Chevrolet,* 13 A D 2d 27, 30) — in soliciting orders on behalf of Dura-Process. What has happened is that, through Kend, Dura-Process was enabled to obtain sales from customers with whom it had never done business before and, indeed, had never solicited. Moreover, in several instances Kend sent metal nameplates made by plaintiff to Dura-Process to copy by the metallizing process. Kend's activities secured about $470,000 in orders for Dura-Process, many of them from customer's formerly served by plaintiff. For these reasons, I believe that Kend and Dura-Process should be enjoined from further violating the covenant against disclosure and should be required to account for any damages resulting from breaches which have already occurred; and the counterclaim by Kend should be dismissed in view of his failure to observe the covenant. He could hardly act as an advisor to a party with which he was competing to furnish merchandise of a character and function similar to that manufactured by his client.

 ---

2. The evidence was that Kend realized between $75,000 and $1,000,000 from the sale of the stock.