■ LEO SILFEN, INC., et al., Respondents, v. MAURICE C. CREAM et al., Appellants, et al., Defendant.— Appeal from a judgment of the Supreme Court, Westchester County, dated March 31, 1971 and made after a nonjury trial, which granted injunctive relief against appellants, directed a further trial to be held as to plaintiffs' money damages, and dismissed the counterclaim of defendant Cream. Judgment affirmed, with costs. No opinion. Rabin, P. J., Hopkins and Latham, JJ., concur; Shapiro, J., dissents and votes to modify the judgment so as to strike therefrom the first three decretal paragraphs thereof, which granted injunctive relief and directed a trial to be held on the issue of money damages, and to dismiss the complaint, with the following memorandum, in which Munder, J., concurs: The appeal is from an interlocutory judgment which permanently enjoined appellants from (1) "directly or indirectly" soliciting, selling or otherwise attempting to do business with any of "the plaintiffs' customers whose names were contained in plaintiffs' lists as of November 17, 1967" and (2) "disclosing or furnishing to anyone, other than the officers of the plaintiffs, the names and addresses of any of the plaintiffs' customers whose names were contained in plaintiffs' customer lists as of November 17, 1967, and from disclosing any of the confidential information

and trade secrets contained in the customer files of the plaintiffs *pertaining to such customers*" (emphasis supplied). Plaintiffs adduced evidence that the so-called "customer lists as of November 17, 1967" are but a small portion of their entire list of active customers totaling between 12,000 and 15,000 in number, but they predicate their right to an injunction, not upon any contract with defendant Cream, their former employee, but upon the theory that that list was of a confidential nature and was gathered at great expense to them by sending out several million mailings to potential customers. The corporate defendant was organized by Cream after he was discharged by plaintiffs. Plaintiffs (two corporations) are engaged in the business of selling various cleaning and maintenance compounds to industrial and commercial customers. In their complaint they set forth the names of Pan Am Building, Tishman Real Estate Co., Douglas, Gibbons, Holiday and Ives, Johnston Oldsmobile Company, Vanderbilt Chemical Co. and Douglaston Steak House as six of their customers who were solicited by defendants. The first cause of action (the only one now applicable) alleges that Cream and his corporation engaged in a business competitive with plaintiffs, but the undeniable fact is that under his contract with plaintiffs Cream had a perfect right to engage in a business competitive with that of plaintiffs* and to solicit their customers unless he was getting those customers' names from the so-called secret and confidential files of plaintiffs. There is, however, not a single word in the record or any credible facts from which an inference can be drawn that Cream had to, or did, copy plaintiffs' file to get the names of their customers. It seems the height of absurdity to claim that Cream, after years of employment with plaintiffs, most of it in an executive capacity, would have to purloin the contents of plaintiffs' files to remember customers like Pan Am Building, Tishman Real Estate Co., Douglas, Gibbons, Holiday and Ives, Johnston Oldsmobile Company, Vanderbilt Chemical Co. and Douglaston Steak House. Plaintiffs' products are sold to building owners and building managers and it would not require a great deal of ingenuity, even if Cream did not recall all of the names of plaintiffs' customers, to get the names of firms using products like plaintiffs' from any classified telephone directory. In the absence of a restrictive covenant Cream was not required either morally or legally to abstain from competition with plaintiffs. They did not by their employment of him obtain a perpetual mortgage on his career (cf. *Park Electrochemical Corp.* v. *Kend*, 36 A D 2d 723; 5 Williston, Contracts [rev. ed.], § 1636, pp. 4580–4583). There is thus posed in this case the issue of the conflicting rights of an employer to be free from *unfair* competition by a former employee and of such an employee who, as is normal, seeks to use the skills and knowledge he has either acquired in that former employment, or which caused his former employer to hire him, in order to continue to earn a living. That question was discussed at length in *Scott & Co.* v. *Scott* (186 App. Div. 518). The court there said (p. 524): "It is well settled that in the ordinary agreement of employment there is no implied contract by the employee not to solicit the trade of customers of his employer after the termination of his employment. Nor does such solicitation constitute unfair competition, in the absence of an express agreement to the contrary. The employee may make use

---

* The applicable provision in the contract reads as follows: "Mr. Cream may terminate this agreement, on not less than three months prior written notice to the corporations. In the event of such termination, Mr. Cream shall not, for one year thereafter, directly or indirectly, engage in the sale to the corporations' customers of any products competing with the corporations' products." It should be noted that this provision for noncompetition does not apply if Cream's services are terminated by plaintiffs, which is the situation in this case.

in his new employment of the knowledge he had acquired in the old. If it involves no breach of confidence it is not unlawful 'for equity has no power to compel a man who changes employers to wipe clean the slate of his memory'". The court went on to say (pp. 524–525): "Even where the names of customers that the employee traded with were on a list or route book which was furnished him by the employer, it has been held that the discharged employee could solicit the trade of such customers where they conducted business places and publicly displayed the character of their business, and dealt.more or less constantly with the employer's competitors. (*Boosing* v. *Dorman,* 148 App. Div. 824, 825; affd., 210 N. Y. 529.) The employee cannot copy a list of the employer's customers with whom he has no personal dealings, and use that list either in his own or another business in competition with his former employer. Nor, if a list be furnished him, confidentially, for a use other than solicitation for a continuance of business, can he make use of that list for the purpose of solicitation of trade in competition with the former employer. * * * In other words, he must not resort to false statements or unfair means to divert the customer of his former employer to his new employer or himself, if he enters into competition with his former employer. But if his agreement of employment did not provide expressly that he, on the termination of his contract, would not engage in a similar business, and he enters upon a fair and open competition with the former employer, he can use the knowledge that he has acquired of the customers of his employer with whom he dealt, as to the needs of their business, the times when they were accustomed to order, or as to the date of the expiration, or the other terms and conditions of their contracts. The case of *People's Coat, Apron & Towel Supply Co.* v. *Light* (171 App. Div. 671; affd., 224 N. Y. 727) is not in conflict with the principles above stated". The *Scott* case is directly in point and requires a reversal of the interlocutory judgment and a dismissal of plaintiffs' complaint, for this is not a case, as the trial court apparently believed, in which "an employee, who has had entrusted to him confidential information pertaining to the conduct and clientele of his employer's business which he would not have obtained were it not for his status as a trusted employee and which affords him an advantage over other competitors to whom the information is not available, may not subsequently use that information to further his own ends" (*Defler Corp.* v. *Kleeman,* 19 A D 2d 396, 401). Nor are such cases as *Inland Rubber Corp.* v. *Triple A Tire Serv.* (210 F. Supp. 880), *Witkop & Holmes Co.* v. *Boyce* (61 Misc. 126, affd. 131 App. Div. 922), *Town & Country House & Home Serv.* v. *Newbery* (3 N Y 2d 554) and *People's Coat, Apron & Towel Supply Co.* v. *Light* (171 App. Div. 671, affd. 224 N. Y. 727) applicable. In each of those cases there were significant differences in the nature of the conduct of the defendants when compared with that of the defendant Cream. In *Inland Rubber Corp.* v. *Triple A Tire Serv.* (*supra*) the undisputed facts demonstrate that the defendants participated in a plan and ensuing conduct clearly aimed at transferring much of the business of the plaintiff to a new competing company, using confidential data obtained by them from the plaintiffs' files and even engaging in such conduct while still working for the plaintiff. In *Town & Country House & Home Serv.* v. *Newbery* (*supra*) it was clearly established that the defendants were plotting, while they were still working for the plaintiff, to use the confidential information they obtained while in the employment of the plaintiffs to compete with the plaintiff. In *Witkop & Holmes Co.* v. *Boyce* (*supra*) the defendant, when leaving the plaintiff's employ, took with him a list of the plaintiff's customers and gave it to his new employer. Other cases in which the defendants were enjoined and held liable in damages all involved situations where the evidence

clearly demonstrated the intent of the defendants to use the confidential information obtained in their former employment to take over some or all of the former employer's business, i.e., *Defler Corp.* v. *Kleeman* (19 A D 2d 396, *supra*) and *Duane Jones Co.* v. *Burke* (306 N. Y. 172). In the cases relied on in *Inland Rubber Corp. (supra)* the defendants were all either salesmen or, if executives as in *Defler Corp.* and *Duane Jones Co.,* they had clearly connived with others to profit improperly from their access to confidential data by using it to take business away from their employer. They had played little or no role in developing the confidential data they were misappropriating. It could not be contended successfully that they had acquired the information by working with it and helping develop it. But here defendant Cream helped develop the very lists he is charged with using improperly. He worked on their development from 1949 to 1967 when he was dismissed. When terminated he began to use his knowledge to develop his business only in one field, the service of real estate managements primarily. There was no evidence of his conduct involving either a breach of confidence or a breach of contract and it is well established that equity will not restrain a former employee from working for himself or for another "except to protect plaintiff's trade secrets" (*Kaumagraph Co.* v. *Stampagraph Co.,* 235 N. Y. 1, 9). Aside from the foregoing, which in my opinion requires reversal of the judgment and dismissal of the complaint on substantive grounds, there are still other reasons for reversal here. The injunction, *inter alia,* restrained defendants from (1) "directly or indirectly" soliciting, selling or otherwise attempting to do business with any of "the plaintiffs' customers whose names were contained in plaintiffs' lists as of November 17, 1967," but, strange as it may seem, that list does not appear in the record because the trial court refused to accept the list in evidence on the ground that it was not properly identified. Yet by the terms of the injunction the defendants are restrained from soliciting *the* customers on that list whose identity does not appear because plaintiffs could not lay a proper foundation for the introduction of the list. So far as this record discloses there is no way of telling whether the injunction is directed against Cream and his corporation soliciting plaintiffs' 12,000 to 15,000 active customers or the 1,100 customers alleged to be on the so-called "select" list to which reference is made in the testimony for plaintiffs by their vice-president and general manager. Assuming that plaintiffs have proved a substantive cause of action warranting the issuance of an injunction, it seems plain that the judgment, in its present form and by reason of its utter ambiguity, in unenforcible. Such a judgment should not be permitted to stand. The judgment bars defendants, under pain of possible citation for contempt for breach of the injunction, from "directly or indirectly" soliciting, selling or otherwise attempting to do business with any of plaintiffs' customers whose names were contained in plaintiffs' lists as of November 17, 1967 and "from disclosing or furnishing to anyone, other than the officers of the plaintiffs, the names and addresses of any of the plaintiffs' customers whose names were contained in plaintiffs' customer lists as of November 17, 1967." Thus if defendants sell to someone on that mysterious list — not in evidence — they are subject to contempt proceedings and to possible incarceration. In *Longshoremen* v. *Marine Trade Assn.* (389 U. S. 64, 76) the court said: "The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one. Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid. Because the decree of this District Court was not so framed, it cannot stand. * * * We do not deal here with a violation of a court order by one who fully under-

stands its meaning but chooses to ignore its mandate. We deal instead with acts alleged to violate a decree that can only be described as unintelligible. The most fundamental postulates of our legal order forbid the imposition of a penalty for disobeying a command that defies comprehension." This court has held to the same effect in *Matter of Carlson* v. *Podeyn* (12 A D 2d 810, 811) where it said: "As punishment for contempt may involve not only loss of property but loss of liberty as well, it is a reasonable requirement that the mandate alleged to be violated should be clearly expressed, and, when applied to the act complained of, it should appear with reasonable certainty that it had been violated". For the foregoing reasons I dissent from the affirmance of the judgment by the majority of this court and vote to modify the judgment appealed from by striking out the relief granted to plaintiffs and to dismiss the complaint.