■ LINCOLN STEEL PRODUCTS, INC., Respondent, v ROBERT SCHUSTER et al., Appellants. (Action No. 1.) ROBERT SCHUSTER, Appellant, v LINCOLN STEEL PRODUCTS, INC., Respondent. (Action No. 2.) GEORGE KARPUS et al., Appellants, v LINCOLN STEEL PRODUCTS, INC., Respondent. (Action No. 3.)—In an action (Action No. 1) against former employees and others for, *inter alia,* the return of certain business records and for an accounting and in two actions by three former employees to recover additional compensation (Actions No. 2 and No. 3), the appeal is from an interlocutory judgment of the Supreme Court, Westchester County, dated April 30, 1975, which, after a nonjury trial, *inter alia* (1) directed defendants in Action No. 1 to deliver certain business records to plaintiff Lincoln Steel Products, Inc., (2) enjoined said defendants from communicating, servicing, shipping to, selling to, or "discussing Lincoln Steel Products, Inc." with certain of Lincoln Steel's customers and (3) enjoined said defendants from communicating with or buying from two of Lincoln Steel's named suppliers. Interlocutory judgment modified by (1) deleting the second decretal paragraph thereof and substituting therefor the following: "ORDERED AND ADJUDGED THAT defendants in Action No. 1, and each of them, and their officers, employees and agents, be and they are enjoined and restrained, until August 8, 1976, from selling or agreeing to sell to customers of Lincoln Steel Products, Inc., who were customers of Lincoln Steel after January 1, 1974, and it is further ORDERED AND ADJUDGED THAT defendants in Action No. 1, and each of them and their officers, employees and agents are forever enjoined from using the business records of, or lists containing the names of plaintiff's customers or suppliers and from making or retaining copies thereof; and it is further", (2) deleting the third decretal paragraph thereof and (3) inserting the following: "up to August 8, 1976" in the fourth decretal paragraph thereof, after the words "which resulted from the solicitation of plaintiff's customers by defendants". As so modified, interlocutory judgment affirmed, with one bill of costs to respondent payable jointly by appellants. The evidence overwhelmingly supports Special Term's conclusion that appellants had engaged in "commercial banditry", including the conversion of Lincoln Steel's business records. However, the injunction was overly broad and should have been limited to the extent indicated. Rabin, Acting P. J., Cohalan and Christ, JJ., concur; Munder, J., concurs in the result, with the following memorandum: Since my colleague, Mr. Justice Shapiro, in his dissenting memorandum, calls attention to my concurrence in his dissenting memorandum in *Leo Silfen, Inc. v Cream* (37 AD2d 721, revd 29 NY2d 387), I note, firstly, that

the facts in *Silfen* differed considerably from those in the instant case and, secondly, that the principles enunciated by the Court of Appeals in *Silfen* support the majority view in this case. In *Silfen* the complaint alleged that Cream had made copies of Silfen's secret and confidential customer files and was using such information in his solicitation. Of a list of 1,100 customers submitted by Silfen, Cream solicited only 47, but these, Cream said, were procured from available commercial lists. In his opinion Judge (now Chief Judge) Breitel said (pp 391-392): "Notably, plaintiffs did not attempt to sustain their allegation that Cream had made copies of plaintiffs' secret and confidential files, or used the recorded detail in those files with respect to each customer's 'profile'. The solicitation of plaintiffs' customers was at most the product of casual memory, or, as defendants would have the court believe, coincidence. If there has been a physical taking or studied copying, the court may in a proper case enjoin solicitation, not necessarily as a violation of a trade secret, but as an egregious breach of trust and confidence while in plaintiffs' service". Here, we have uncontroverted proof not only that appellants physically appropriated Lincoln Steel's business records, including customer credit data, but that, while still employed by Lincoln Steel, they diverted three business opportunities to the new venture which they were setting up. This conduct clearly justifies injunctive relief. Shapiro, J., dissents in part and votes to modify the interlocutory judgment by deleting therefrom the provisions enjoining appellants from doing business with Lincoln Steel Products, Inc.'s customers, with the following memorandum: The issue here is not whether appellants' conduct was unethical, for it surely was, but whether it was in violation of law. Basically, the question is whether this case comes under the principles enunciated in *Defler Corp. v Kleeman* (19 AD2d 396) or *Leo Silfen, Inc. v Cream* (29 NY2d 387). Special Term, and apparently the majority of this court, find the *Defler* case controlling. I believe that the principles laid down in *Silfen* apply. In *Defler,* as here, the plaintiff corporation was a purchaser of certain products which it in turn sold to a large number of customers developed by it over a period of more than 25 years. During that period the plaintiff had compiled a comprehensive catalogue consisting of the particular needs of the firm's customers and an analysis of the materials available from the firm's various industrial suppliers. The Appellate Division found that since the by-product of one type of production process frequently could not satisfactorily be substituted for that of another process, "these records furnished the essential and unique key to doing business in plaintiff's particular manner" *(Defler Corp. v Kleeman,* 19 AD2d 396, 398, *supra).* It also found (pp 398-399) that "the physical assets of the corporation were of relatively slight value. The really substantial asset was Defler's property rights in the confidential information". There, as here, the general manager and a person he hired as a salesman, "embarked upon a course of action designed to divert to themselves the very business they had been employed to obtain and retain for the plaintiff" *(Defler Corp. v Kleeman, supra,* p 399). The new corporation they set up for this purpose "dealt almost exclusively with customers and suppliers of plaintiff" *(Defler Corp. v Kleeman, supra,* p 400), and "The new corporation proved to be an immediate success" *(Defler Corp. v Kleeman, supra,* p 399). The Appellate Division found that the defendant, the plaintiff's former general manager, had appropriated "confidential information" contained in plaintiff's business records, saying (pp 400-401): "The customers and suppliers of plaintiff, though perhaps well known in industrial fields, were not readily apparent as customers and suppliers for plaintiff's particular type of business. As we have observed, the information

as to the availability of materials and the peculiar needs of plaintiff's customers was derived from the intimate knowledge acquired through years of experience by Defler. Therefore, the defendant by exploiting this information obtained an advantage not available to a stranger seeking to set himself up in fair competition with plaintiff. The actions of the defendants in this case amounted to theft not only of customers which the plaintiff had discovered and developed but of the essential tools for serving such customers." The rationale of the court's ruling in *Defler* was that the plaintiff's lists were entitled to judicial protection because the names thereon: " 'could only be secured by the expenditure of a large amount of time, effort and money in gathering together such a vast list of consumers who desired to do business in this peculiar way. These customers were not classified as likely customers in any public directory. They were not discoverable by any public display of their willingness to deal' * * * . It would be different if these customers had been equally available to appellants and respondent, but, as has been related, these customers had been screened by respondent as *[sic]* considerable effort and expense, without which their receptivity and willingness to do business with this kind of a service organization could not be known" *(Defler Corp. v Kleeman, supra,* p 403 [citing *Town & Country Serv. v Newbery,* 3 NY2d 554, 559–560]). However, I cannot find that *Defler* has any application here, for the utilization of the material contained in the books and lists taken by appellants, which Special Term and the majority of this court call "commercial banditry", did not involve the taking of "trade secrets" or the use of "confidential information". It is only the appropriation of such materials which receives the special protection of an injunction against its use in the future. That was the teaching of *Silfen.* In that case the trial court ruled that the employer's list of customers and catalogue of customer data were trade secrets and enjoined the defendant from doing business with any of the plaintiff's customers. This court affirmed by a vote of 3 to 2. In my dissenting memorandum, joined in by Mr. Justice Munder, I pointed out that "in the absence of a restrictive covenant Cream was not required either morally or legally to abstain from competition with plaintiffs. They did not by their employment of him obtain a perpetual mortgage on his career (cf. *Park Electrochemical Corp. v Kend,* 36 AD2d 723; 5 Williston, Contracts [rev ed], § 1636, pp 4580–4583)" *(Leo Silfen, Inc. v Cream,* 37 AD2d 721, 722). I then went on to say that "there is thus posed in this case the issue of the conflicting rights of an employer to be free from *unfair* competition by a former employee and of such an employee who, as is normal, seeks to use the skills and knowledge he has either acquired in that former employment, or which caused his former employer to hire him, in order to continue to earn a living" *(id.,* p 722). In reversing the judgment appealed from in *Silfen* and in dismissing the complaint the Court of Appeals said: "Plaintiffs have failed to prove a physical appropriation or copying of *confidential information,* or wrongful disclosure or use *of a trade secret.* In particular, no trade secret protection is warranted since plaintiffs' customers are likely, if not known, users of the employers' merchandise and engaged in business at advertised locations" *(Leo Silfen, Inc. v Cream,* 29 NY2d 387, 389, *supra* [emphasis supplied]). In our case there has been a physical appropriation and copying, but the data obtained was neither "confidential information" nor a "trade secret". Lincoln Steel is therefore not entitled to enjoin appellants from soliciting plaintiff's customers for, as the Court of Appeals pointedly noted in *Silfen* (p 392): "Generally, where the customers are readily ascertainable outside the employer's business as prospective users or consumers of the employer's services or products, trade

secret protection will not attach and courts will not enjoin the employee from soliciting his employer's customers". Continuing, the court said (p 393): "The customers solicited by defendants, as apparently found by the trial court, are openly engaged in business in advertised locations and their names and addresses may readily be found by those engaged in the trade." Here, as in *Silfen,* there can be no question that the customers solicited by appellants, and whose names and addresses were contained in the appropriated lists, "are openly engaged in business in advertised locations and their names and addresses may readily be found by those engaged in the trade", since the identities of the customers originally solicited by Lincoln Steel were obtained by it from trade directories. Thus, their names and their needs hardly qualify as a trade secret, a term defined in *Silfen* as "nothing more than private matter; something known to only one or a few and kept from the general public, and not susceptible to general knowledge" *(id.,* pp 394–395). It is also noteworthy that the court said in *Silfen* (p 395): "In the absence of express agreement to that effect between the parties, or a demonstration that a customer list has the several attributes of a trade secret, courts, without more, should not enjoin an ex-employee from engaging in fair and open competition with his former employer. The limiting effects upon the former employee with respect to his ability to earn a living are marked and obvious. (Cf. *Purchasing Assoc. v Weitz,* 13 NY2d 267, 272; *Paramount Pad Co. v Baumrind,* 4 NY2d 393.)" Under the circumstances, I find no legal warrant for the action of Special Term in permanently enjoining defendants from doing business with plaintiff's customers or for the modification of that relief granted plaintiff by this court in restricting such conduct until August 8, 1976. To that extent I differ with the conclusion reached by the majority of this court.