**MARCRAFT RECREATION CORP., Plaintiff,**

v.

**FRANCES DEVLIN CO., INC. and Hoelzel S/A, Defendants.**

No. 78 Civ. 2569 (KTD).

United States District Court, S. D. New York.

Oct. 5, 1978.

Blum, Moscovitz, Friedman & Kaplan, New York City, for plaintiff; Steven B. Pokotilow, New York City, of counsel.

Rogers, Hoge & Hills, New York City, for defendants; Frank H. Gordon, James N. Blair, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This is a diversity action brought by plaintiff Marcraft Recreation Corp., a New Jersey company, against defendants Frances Devlin Co., Inc. and Hoelzel S/A, citizens of New York and Brazil, respectively. Plaintiff is a manufacturer of sporting goods equipment, including paddle and racquet products. Defendant Hoelzel, a Brazilian manufacturer of rubber products, al-

legedly entered into a contract with plaintiff, through its New York representative, Devlin, designating plaintiff the sole merchandiser of Hoelzel's sporting goods in the United States. Plaintiff claims that Hoelzel breached this contract and has brought the instant action against both defendants seeking an injunction, an accounting and damages. Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted.

Assuming the truth of the well pleaded allegations, as I must for purposes of this motion, the facts are as follows: plaintiff and Hoelzel entered into a written agreement on February 14, 1975, whereby for a one-year period Hoelzel designated plaintiff the sole merchandiser of Hoelzel's sporting equipment supplied to the United States. Pursuant to the agreement, plaintiff and Hoelzel "expended joint efforts in developing tooling, dies and molds for manufacturing handballs." Complaint ¶ 11. These efforts continued until after the formal expiration of the written agreement on January 20, 1976, and were manifested by numerous visits by Devlin to the Marcraft facilities in New York and New Jersey right up until the filing of the complaint. Additionally, "on at least six occasions" Jorge Hoelzel, Jr. and Frances Devlin, presidents of the defendant corporations bearing their names, visited the Marcraft facility in connection with finalizing the design for racquet balls and handballs. Complaint ¶ 11.

Marcraft made repeated efforts to finalize the exclusive distribution arrangement and wrote to Hoelzel on March 21, 1977, insisting that the parties enter into a written contract. Jorge Hoelzel, Jr. replied by letter dated March 31, 1977, as follows:

> You have had problems and so did I, Nat. We are together in this enterprise relating to the No. 1 and M–21 balls and I think that any written arrangement between us is superfluous and unnecessary as far as we have motivation with these articles . . .
>
> But if you still feel necessary a contract Nat, please send me a sketch of one. I will make the necessary adjustments on my part and return it for your approval. Complaint ¶ 13.

On December 21, 1977, plaintiff proposed a contract whereby it would be the exclusive distributor of Hoelzel's racquet balls and handballs for a three-year period with an option to renew. Hoelzel wrote to plaintiff on January 12, 1978, advising that it would not enter in to a written arrangement and that it intended to sell the handballs and racquet balls to others.

Thereafter, on June 6, 1978, Marcraft brought this action asserting five causes of action. In the first, plaintiff charges Hoelzel with a willful and wanton breach of its exclusive agreement with plaintiff. The second claim is that defendants are being unjustly enriched as a result of manufacturing and selling the racquet balls and handballs "using the tooling, dies and molds and know-how" jointly developed by plaintiff and Hoelzel to meet plaintiff's specifications. Plaintiff's third claim is that defendants have wrongfully converted plaintiff's assets for their own benefit. The fourth claim charges defendants with unfair competition, while the fifth claim alleges a conspiracy between defendants and unknown third parties to distribute racquet balls and handballs resulting in tortious interference with the advantageous business relationships developed between defendants and plaintiff.

■ Defendants contend that plaintiff has alleged no more in its first three claims than an agreement to agree. Clearly the written agreement between plaintiff and Hoelzel had expired on January 20, 1976. Thereafter, according to defendants, there was no agreement, nor is one alleged. A fair reading of the complaint reveals, however, that while no formal written agreement was entered into after the February 15 contract expired, plaintiff and defendants were continuing performance of their original agreement. Thus, some sort of informal arrangement was clearly contemplated by the parties and is evidenced by the letter of Hoelzel's president to Marcraft's president

We are together in this enterprise . . and I think any written arrangement between us is superfluous and unnecessary.

This is more than a mere agreement to agree. And while the second paragraph of the letter calls for a written contract *if Marcraft's president still felt one necessary*, it certainly does not suggest that any activities in pursuit of the enterprise prior to formalizing the arrangement would be beyond the scope of their understanding. Indeed, it appears that Hoelzel believed a written arrangement superfluous and agreed to it solely as an accommodation to Marcraft.

In view of the import of this letter, I believe plaintiff's allegations are sufficient to withstand this motion to dismiss. Present in the complaint are pleadings that suggest the existence of an agreement, due performance thereunder by plaintiff and a breach by defendant Hoelzel. *See Marquardt-Glenn Corp. v. Lumelite Corp.*, 11 F.R.D. 175 (S.D.N.Y.1951). The fact that a formal written agreement was never executed does not suggest the absence of a contract especially where defendant's own statement belies such a conclusion.[1]

█ Defendants also challenge the second claim insofar as it charges defendants with unjust enrichment. Unjust enrichment contemplates a situation where benefits are received by one party which, in fact, belong to another. *See Bradkin v. Leverton*, 26 N.Y.2d 199, 309 N.Y.S.2d 192 (1970). What arises is a quasi-contract to make restitution for these benefits. This quasi-contract rests upon equitable principles and is not contingent upon the existence of an express or even an implied agreement. *Id.* at 197, 309 N.Y.S.2d at 196. Thus, the second claim in the instant complaint is independent of the cause of action for breach of contract, except to the extent that the pleadings in the first claim lay a foundation for the conclusion in the second claim that defendants have taken certain benefits from plaintiff without providing appropriate compensation therefor.

In this case, plaintiff has alleged that together with defendant Hoelzel it developed tooling, dies and molds to manufacture handballs and racquet balls. Hoelzel and Devlin now allegedly seek to take advantage of the technical services provided by plaintiff without duly compensating it. From the allegations, it is apparent that plaintiff undertook its efforts in the belief that it was acting pursuant to its original agreement with defendant Hoelzel. The allegations further suggest that Hoelzel and Devlin are reaping the benefits of plaintiff's efforts. Accordingly, plaintiff has alleged facts sufficient to support a claim of unjust enrichment. *See generally Restatement of the Law of Restitution*, § 40(b).

Defendants challenge plaintiff's third cause of action on the grounds that a claim for conversion will not lie for the appropriation of intangibles such as requirements and specifications. Plaintiff also lists among its valuable assets converted by defendants the tooling, dies and molds jointly developed by it and Hoelzel. Defendants claim, however, that this cause of action must fail because plaintiff has not alleged the right of immediate possession required to support an action for conversion.

█ To establish a cause of action in conversion, a plaintiff must show that it has an immediate and superior right to possession of the allegedly converted material. *Independence Discount Corp. v. Bressner*, 47 A.D.2d 756, 365 N.Y.S.2d 44 (2d Dep't 1975). Since plaintiff has pleaded that it developed the valuable assets in a joint effort with Hoelzel, it is difficult to perceive how it can claim an immediate and superior right over Hoelzel thereto. Moreover, the pleadings do not contain such allegations as to either defendant. This deficiency is fatal to the third cause of action and, accordingly, it must be dismissed.

█ In the fourth cause of action, plaintiff alleges that defendants' activities in distributing and selling the racquet balls and handballs constitute unfair competition

---

1. Defendants have not raised the statute of frauds as a defense and I, therefore, take no position on the applicability of that doctrine to the facts of this case.

by depriving plaintiff of its exclusive rights under the distributorship agreement. Unfair competition is the misappropriation for commercial advantage of a benefit or property right belonging to another. *Dior v. Milton*, 9 Misc.2d 425–431, 155 N.Y.S.2d 443, 451 (Sup.Ct.), *aff'd* 2 App.Div.2d 879, 156 N.Y.S.2d 996 (1st Dep't 1956). While it originally was confined to cases of "palming off" another's goods as one's own, over the years the concept of unfair competition has expanded to encompass a variety of commercial situations. *Id.* In this case, plaintiff charges that defendants are interfering with its exclusive right to distribute the handballs and racquet balls developed pursuant to the agreement with Hoelzel. Given the liberal interpretation accorded the concept of unfair competition, *see Metropolitan Opera Ass'n, Inc. v. Wagner-Nichols Recorder Corp.*, 199 Misc. 786, 101 N.Y.S.2d 483 (Sup.Ct.1950), *aff'd* 279 App.Div. 632, 107 N.Y.S.2d 795 (1st Dep't 1951), I cannot say that plaintiff has failed to state a claim based upon that theory. *Cf. Cigogne, Inc. v. Luxury Trading Corp.*, 13 App.Div.2d 928, 216 N.Y.S.2d 558 (1st Dep't 1961).

Defendants finally challenge the fifth cause of action which alleges a conspiracy among defendants and unknown third parties to manufacture and distribute the racquet balls and handballs in question. This conspiracy allegedly constitutes tortious interference "with the advantageous business relationships developed from 1975 to date between Defendants and Plaintiff." Complaint ¶ 23. Plaintiff has apparently conceded that this claim for tortious interference does not lie against Hoelzel since "one contracting party does not have a cause of action against the other" for either conspiracy to breach or for inducing the breach. *Cukor Industries v. William L. Crow Construction Co.*, 6 App.Div.2d 415, 178 N.Y.S.2d 777 (1st Dep't 1958). Plaintiff contends in its memorandum, however, that the theory of the fifth claim is that Devlin, as exclusive United States agent for Hoelzel, interfered with plaintiff's contractual relations with Hoelzel and may be held liable for such tortious conduct.

■ Even were I to accept plaintiff's memorandum as a fair interpretation of its complaint, plaintiff's efforts to proceed upon this theory are unavailing. Although it is, of course, true that an agent may be held liable for its individual torts, it may not be held liable for inducing the breach of its principal's contract. *Greyhound Corporation v. Commercial Casualty Insurance Co.*, 259 App.Div. 317, 19 N.Y.S.2d 239 (1st Dep't 1940). *See also Shaw v. Merrick*, 401 N.Y.S.2d 508 (1st Dep't 1978). Since the principal himself may not be held for such actions neither may his agent who is, in effect, his alter ego. *Cf. Cangold v. Rickles*, 11 Misc.2d 814, 174 N.Y.S.2d 493 (Sup. Ct.1958), *modified*, 7 App.Div.2d 911, 182 N.Y.S.2d 886 (2d Dep't 1959) where the Court sustained a cause of action against agents acting for an individual defendant. The trial judge distinguished cases involving principals that were corporations, noting that in those situations the agent could not be held since a corporation can only act through its agents.

■ Thus, in the absence of allegations that suggest the agent committed a separate tort in conjunction with the breach or that it personally profited as a result thereof, the pleadings are defective insofar as they seek to assert a cause of action against the agent Devlin for inducing the breach of the contract between plaintiff and Devlin's principal, Hoelzel. *See Erlich v. Alper*, 145 N.Y.S.2d 252, (Sup.Ct.1955), *aff'd* 1 App. Div. 875, 149 N.Y.S.2d 562 (1st Dep't 1956).

Based upon the foregoing defendants' motion to dismiss the third and fifth claims is granted. The motion to dismiss the remaining claims is denied.

SO ORDERED.