GREENWICH MILLS CO., INC., Respondent, v BARRIE HOUSE COFFEE COMPANY, INC., et al., Appellants.

Second Department, February 14, 1983

APPEARANCES OF COUNSEL

*Kobrick & Rosen* (*Saul Kobrick* and *Ralph Cherchien* of counsel), for appellants.

*Brauner Baron Rosenzweig Kligler Sparber & Bauman* (*Howard L. Simon* and *Steven R. Uffner* of counsel), for respondent.

OPINION OF THE COURT

WEINSTEIN, J.

Irwin Sheifetz, Robert Ulrich, and Angelo Calagridus are former salesmen of Greenwich Mills Co., a firm engaged in the business of supplying coffee, tea and similar commodities to restaurants, hotels and stores in metropolitan New York City. As a condition of his employment with Greenwich Mills, Sheifetz had agreed not to "solicit * * * the custom, trade, business, or patronage of the Employer"

for a period of nine months after the termination of his employment with Greenwich Mills. Ulrich and Calagridus had made similar agreements, to be effective for one year after they left Greenwich Mills' employ.

The three salesmen left their positions with Greenwich Mills in 1976 or 1977, and assumed similar positions with Barrie House Coffee Company, a competitor of Greenwich Mills. According to the allegations of the complaint, customers of Greenwich Mills ceased making purchases from Greenwich Mills, and switched their commercial allegiance to Barrie House, within the periods of the respective nonsolicitation covenants. Greenwich Mills thus instituted various causes of action against Barrie House and the three salesmen for breach of, and inducement to breach, the nonsolicitation covenants. The complaint seeks $142,500 in compensatory damages, and $150,000 in punitive damages.

The defendants, who have not thus far denied that they solicited business from the customers in question during the periods of the nonsolicitation covenants, moved for partial summary judgment, asserting that the covenants were unenforceable. They argued that covenants such as are involved herein are valid only if the services rendered by the covenantors are unique (which is clearly not the case here) or the covenants are designed to protect trade secrets; here, defendants argued that Greenwich Mills' customers are commonly known and easily ascertainable by those in the industry. In opposition, Greenwich Mills stated, *inter alia,* that the three salesmen in question indeed had access to confidential information concerning the preferences of various customers for particular, precise blends of coffee, and the prices the customers were willing to pay for those blends.

Special Term denied the motion for partial summary judgment, concluding that the restrictive covenants are not unenforceable as a matter of law, and that the question of whether some of Greenwich Mills' customers switched commercial allegiance in response to solicitation, or by their own volition, was a question of fact requiring a trial.

We are now called upon to determine certain issues bearing on the validity of the nonsolicitation covenants.

Courts have struggled for many years in trying to balance the conflicting policy considerations brought into play by restrictive employment covenants (see *Simons v Fried,* 302 NY 323). On the one hand, it is recognized that there are "powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood" (*Purchasing Assoc. v Weitz,* 13 NY2d 267, 272; see, also, *Oregon Steam Nav. Co. v Winsor,* 87 US 64; *Paramount Pad Co. v Baumrind,* 4 NY2d 393; *Service Systems Corp. v Harris,* 41 AD2d 20, 23). On the other hand, "the courts must also recognize the legitimate interest an employer has in safeguarding that which has made his business successful and to protect himself against deliberate surreptitious commercial piracy" (*Reed, Roberts Assoc. v Strauman,* 40 NY2d 303, 308, mot for rearg den 40 NY2d 918). Indeed, the First Department in *Bates Chevrolet Corp. v Haven Chevrolet* (13 AD2d 27, 29, mod 16 AD2d 917, affd 13 NY2d 644) went so far as to consider it "axiomatic" that a restrictive employment covenant is enforceable, provided that "it is reasonably necessary for the protection of the employer and is reasonably limited as to time and place * * * In the case of employment contracts, in contrast to agreements for the sale of businesses, a significant consideration in determining the reasonableness of covenants against competition is the hardship which may be worked upon the employee in pursuing a livelihood and putting to gainful use the skills and experience he has acquired in his trade * * * Such concern for earning a living does not, however, immunize an employee from contractual restraints against capitalizing on his acquaintance with his former employer's customers or the favor he found with them".

Not surprisingly, then, "no hard-and-fast rules have yet been formulated and courts have been continuously engaged in the ongoing task of determining what restrictions are reasonable given the peculiar circumstances and context of each individual case * * * Courts must respond to each case as it presents itself, and often times * * * must resolve seemingly divergent considerations of public pol-

icy" (*Matter of Sprinzen* [*Nomberg*], 46 NY2d 623, 628-629).[1]

Certain general principles have, however, been enunciated. A restrictive employment covenant will be subject to specific enforcement only if it is reasonable in time and area, necessary to protect the employer's legitimate interests while being not unreasonably burdensome to the employee, and not harmful to the general public (see *Reed, Roberts Assoc. v Strauman, supra*). Clearly, however, the application of these rules depends entirely on the totality of circumstances. Under certain circumstances, a covenant which is to be effective forever (see *Karpinski v Ingrasci*, 28 NY2d 45) or for five years (see *Gelder Med. Group v Webber,* 41 NY2d 680) will be enforceable, whereas under other circumstances, a three-year (see *Reed, Roberts Assoc. v Strauman, supra*) or a two-year (see *Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.,* 42 NY2d 496) covenant will not. Likewise, much will depend on whether the covenant involves a total ban on competition with the former employer or, as here, the far lesser restriction of a ban on solicitation of its customers. In this connection, we note the decision in *Mohawk Maintenance Co. v Kessler* (52 NY2d 276), wherein it was held that the seller of a business has a legal duty to refrain indefinitely, and not just for a reasonable period of time, from soliciting customers from the purchaser of the business, whether or not there is an express agreement to that effect, in light of the fact that the purchaser is deemed to have purchased the "goodwill" of the business. Moreover, a court, upon finding part of a restrictive employment covenant to be enforceable and part not so, may sever the respective portions of the covenant and give effect only to the enforceable part (see *Karpinski v Ingrasci, supra; American Yearbook Co. v St. Pierre,* 56 AD2d 832). But a severance of the impermissible portions from the valid portions in order to uphold the covenant to the extent that it is reasonable is not always justified by the circumstances of the particular case (see

1. The issue in *Sprinzen* was the validity, not of the restrictive covenant, but rather, of an arbitrator's award holding it enforceable. Hence, *Sprinzen* is not relevant to our analysis herein.

*Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp., supra).*

Since the instant matter is before the court now in the context of a motion for partial summary judgment, without a trial or even full discovery having yet been held, it is impossible to judge the validity of the covenants in question in light of these considerations. Greenwich Mills has placed in the record certain facts bearing upon the alleged reasonableness of the covenants, and a trial will be necessary to determine their reasonableness, as well as to determine if the covenants actually were violated. However, the issue which constitutes the crux of this motion for partial summary judgment can indeed be resolved now. That issue is the extent to which trade secrets, or some other special circumstance (set forth *infra*), must be present in order to render a nonsolicitation agreement enforceable.

It is clear that in the *absence* of an express nonsolicitation agreement, an ex-employee not in possession of trade secrets will not be precluded from soliciting his former employer's customers (see *Leo Silfen, Inc. v Cream,* 29 NY2d 387; *Tepfer & Sons v Zschaler,* 25 AD2d 786), unless he has engaged in an act such as stealing or memorizing his employer's customer lists (see *Lincoln Steel Prods. v Schuster,* 49 AD2d 618). The ex-employee's knowledge of trade secrets will, on the other hand, bar him from so soliciting, even without an express agreement (see *Town & Country House & Home Serv. v Newbery,* 3 NY2d 554; *Lepel High Frequency Labs. v Capita,* 278 NY 661). At the other extreme, a broad noncompetition covenant, as opposed to a less restrictive nonsolicitation covenant, will also not be enforced absent some circumstances such as the employee's possession of a trade secret (see *Reed, Roberts Assoc. v Strauman,* 40 NY2d 303, *supra)* or some unique or extraordinary ability or skill of the employee (see *Purchasing Assoc. v Weitz,* 13 NY2d 267, *supra; Frederick Bros. Artists Corp. v Yates,* 271 App Div 69, affd 296 NY 820). This appeal focuses on the middle case: where there *is* an agreement, but it is a mere nonsolicitation covenant. It is conceded that the defendant salesmen do not possess any unique or extraordinary abilities or skills. Are trade se-

crets necessary for the enforcement of these covenants?[2] We answer that question in the affirmative. The restrictive covenants in question are unenforceable as a matter of law unless it can be shown that the defendant salesmen were privy to trade secrets.

This certainly has not always been the law. In *Monroe Coverall Serv. v Bosner* (283 App Div 451), a former employee of an industrial laundering firm had covenanted not to compete with his former employer for three years following the termination of his employment, and never to solicit his former employer's customers. The court, finding no trade secrets to be present, struck the noncompetition provision; but despite the lack of trade secrets, upheld the nonsolicitation covenant, merely shortening its duration to three years solely on the ground of reasonableness. An identical result was reached in *Carpenter & Hughes v De Joseph* (27 Misc 2d 1003, mod on other grounds 13 AD2d 611, affd 10 NY2d 925); there, a covenant restricting defendant from engaging in the ophthalmic dispensing business for five years was stricken in the absence of trade secrets, but an agreement that, for the same period of time, he would not solicit his former employer's customers was upheld, except for one slight narrowing of its scope on grounds of reasonableness. Likewise, in *Bates Chevrolet Corp. v Haven Chevrolet* (13 AD2d 27, mod 16 AD2d 917, affd 13 NY2d 644, *supra*), a covenant restricting, for five years, a former employee from soliciting or accepting business from his former employer's customers was enforced; again, no trade secrets were involved.

However, these cases were all decided before the Court of Appeals handed down its decision in *Reed, Roberts Assoc. v Strauman* (40 NY2d 303, *supra*), which, in a significant departure from the state of the law as set forth in the cases just cited, set forth the requirement, as a condition precedent for enforcement of a restrictive covenant, that trade

**2.** Upon the resolution of this issue hinges the answer to another question, not raised at bar: if trade secrets are not required for enforcement of a nonsolicitation covenant, can a noncompetition covenant, invalid only because no trade secrets are involved, be held enforceable to the extent that it bars solicitation (cf. *Karpinski v Ingrasci,* 28 NY2d 45; *Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.,* 42 NY2d 496)?

secrets or a unique skill exist[3] (see, also, *Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.*, 42 NY2d 496, *supra*). In *Reed, Roberts Assoc.*, to be sure, a covenant against both solicitation *and* competition was involved, and it has been suggested by Greenwich Mills that the trade secret or unique skill requirement was applied merely to the non-competition aspect, with the court declining to sever and enforce the nonsolicitation clause. But this argument is not valid. It was the trial court in *Reed, Roberts Assoc.* which held the noncompetition covenant unenforceable, and the essence of the decision of the Court of Appeals was specifically directed at the nonsolicitation clause. Indeed, the dispositive paragraph in the court's opinion begins as follows: "With these principles in mind we consider first the issue of *solicitation* of customers in the case at bar" (*Reed, Roberts Assoc. v Strauman*, 40 NY2d 303, 308, *supra*; emphasis supplied). We can reach no conclusion other than that the law of this State, as enunciated by its highest court, is that a nonsolicitation covenant will not be enforced absent trade secrets or other special circumstance, as set forth in *Reed, Roberts Assoc.* The First Department, in *Gaynor & Co. v Stevens* (61 AD2d 775), has already reached the identical conclusion.

We note that this holding renders nonsolicitation covenants virtually purposeless, except insofar as they define the geographical or durational scope of the restriction, for if trade secrets *are* involved, an injunction may lie even in the absence of a covenant (see *Town & Country House & Home Serv. v Newbery*, 3 NY2d 554, *supra*). But we feel that this result is consistent with public policy considerations. We referred earlier to the strong policy against restricting an individual from seeking to make his livelihood in whatever manner he feels appropriate, as long as

---

**3.** The decision in *Reed, Roberts Assoc. v Strauman* (40 NY2d 303) is puzzling in one respect. The court there said that the law enunciated in *Leo Silfen, Inc. v Cream* (29 NY2d 387), finding a necessity that trade secrets be present before a nonsolicitation injunction would lie, was "dispositive" (p 308). The fact is, however, that unlike in *Reed, Roberts Assoc.*, the restriction in *Leo Silfen, Inc.* was not controlling since the defendant had been discharged as opposed to having terminated his employment of his own accord. It seems, therefore, that *Reed, Roberts Assoc.*, rather than merely applying the rule of *Leo Silfen, Inc.*, actually represents a significant extension of it.

no unfair advantage is taken of anyone else. However, there is the concomitant consideration that if, indeed, there is any element of unfair advantage or unethical conduct, even if not rising to the level of commercial piracy (see *Lincoln Steel Prods. v Schuster,* 49 AD2d 618, *supra*), an injunction should lie or damages should be available. Thus, it is not necessary that the party seeking the injunction or damages show that the other party was in possession of a substantial trade secret, or one fundamental to the first party's business. Any meaningful trade secret, through the use of which the second party might gain an unfair advantage which he might not have gained had he not been in possession of the trade secret, will be sufficient to render an otherwise reasonable restrictive covenant enforceable.

It is on the basis of this latter policy consideration that we affirm Special Term's order. Special Term, in denying defendants' motion for partial summary judgment, concluded that trade secrets need not exist in order that a nonsolicitation covenant be enforced. With this conclusion, as stated above, we do not agree. However, we conclude that there has been a sufficient allegation of trade secrets to defeat the motion. Greenwich Mills has alleged that the three defendant salesmen had access to confidential information concerning various customers' preferences for particular, precise blends of coffee and the prices those customers were willing to pay for those blends. We cannot say, as a matter of law, that if that allegation is proven at trial, it would be insufficient to constitute a meaningful trade secret.

A trial is necessary to determine the reasonableness of the covenants, and whether they were in fact breached. While we cannot, at this stage of the litigation, make findings as to these issues, we believe that the relatively short duration of the covenants, and the fact that, insofar as their enforcement is sought, they bar only solicitation of Greenwich Mills' customers but not competition in general, should be considered when making findings as to their reasonableness.

The issue as to the demand for punitive damages, raised on appeal by defendants, was not raised before Special

Term; hence, we decline to pass upon it. We have considered the remaining issue raised by defendants, and have found it to be devoid of merit.

For the reasons set forth herein, the order of Special Term should be affirmed.

MOLLEN, P. J. (concurring). In seeking partial summary judgment, the three defendant salesmen neither deny that they solicited the plaintiff's customers nor contend that the nonsolicitation agreements were unreasonable in time or area. Rather, their argument essentially is that, since their services were not unique or extraordinary, and since they have not divulged trade secrets or confidential customer information, the nonsolicitation agreements are unenforceable as a matter of law. In response, plaintiff Greenwich Mills alleges that, in soliciting its customers, the defendant salesmen did in fact make use of confidential customer information concerning customers' preferences for precise blends of coffee and the prices the customers were willing to pay for those blends.

It is settled that a reasonably limited nonsolicitation agreement will be enforceable to the extent necessary to protect an employer's confidential customer information (see, e.g., *Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.,* 42 NY2d 496, 499; *Reed, Roberts Assoc. v Strauman,* 40 NY2d 303, 308, mot for rearg den 40 NY2d 918; *Carpenter & Hughes v De Joseph,* 10 NY2d 925; *Lepel High Frequency Labs. v Capita,* 278 NY 661). In the present posture of this case, I agree with Justice WEINSTEIN that it cannot be said as a matter of law that the allegations proffered by the plaintiff are insufficient to establish that the defendant salesmen disclosed and used confidential customer information acquired while in the employ of Greenwich Mills. Accordingly, the defendants' prayer for partial summary judgment, grounded on the contention that the nonsolicitation agreements are unenforceable as a matter of law, was properly denied.

TITONE, J., concurs with WEINSTEIN, J.; MOLLEN, P. J., concurs, with an opinion in which RUBIN, J., concurs.

Order of the Supreme Court, Westchester County, dated December 22, 1981, affirmed, with $50 costs and disbursements.