Twitchell Tech. Prods., LLC v Mechoshade Sys., LLC (2024 NY Slip Op 01744)

Twitchell Tech. Prods., LLC v Mechoshade Sys., LLC

2024 NY Slip Op 01744

Decided on March 27, 2024

Appellate Division, Second Department

Connolly, J.p.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 27, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

FRANCESCA E. CONNOLLY, J.P.
ROBERT J. MILLER
LARA J. GENOVESI
DEBORAH A. DOWLING, JJ.

2021-05232
 (Index No. 713089/20)

[*1]Twitchell Technical Products, LLC, appellant,
v
Mechoshade Systems, LLC, respondent.

APPEAL by the plaintiff, in an action for a judgment declaring that a certain restrictive covenant is invalid and unenforceable, from an order of the Supreme Court (Leonard Livote, J.), entered June 29, 2021, in Queens County. The order denied the plaintiff's motion pursuant to CPLR 3211(a) to dismiss the defendant's counterclaims.

Katten Muchin Rosenman LLP, New York, NY (Mark T. Ciani, Craig Convissar, Robert T. Smith, Mary C. Fleming, pro hac vice, Charles L. Perry, pro hac vice, and Terrence J. Fleming, pro hac vice, of counsel), for appellant.
Fried, Frank, Harris, Shriver & Jacobson LLP, New York, NY (Joshua D. Roth, Shira Sandler, and Bryan McIntyre of counsel), for respondent.

CONNOLLY, J.P.

OPINION & ORDER
This appeal requires us to analyze the factors to consider when evaluating whether a restrictive covenant in an ordinary commercial contract is enforceable. Although there is a dearth of New York state case law on this issue, we agree with those courts that have analyzed these types of covenants under a rule of reason, considering (1) whether the covenant protects a legitimate business interest; (2) the reasonableness of the geographic scope and temporal duration; and (3) the degree of hardship upon the party against whom the covenant is enforced.
This appeal also requires us to consider whether courts have the power to sever and grant partial enforcement of overly broad restrictive covenants in ordinary commercial contracts. Because the Court of Appeals has held that courts have such power with regard to overly broad restrictive covenants in employment agreements (see BDO Seidman v Hirshberg, 93 NY2d 382, 395), we similarly hold that courts have the power to sever and grant partial enforcement of overly broad restrictive covenants in ordinary commercial contracts and may do so under the appropriate circumstances.
I. Factual and Procedural Background
This appeal relates to the motion of the plaintiff, Twitchell Technical Products, LLC (hereinafter Twitchell), pursuant to CPLR 3211(a) to dismiss the counterclaims of the defendant, Mechoshade Systems, LLC (hereinafter Mechoshade). We accept the following facts as alleged in Mechoshade's counterclaims as true for purposes of this CPLR 3211(a) motion (see Leon v Martinez, 84 NY2d 83, 87).
Mechoshade has manufactured solar roller shades for approximately 50 years. One of the challenges associated with manufacturing solar roller shades is procuring fabrics that can be repeatedly rolled up and down without damaging the fabric, and to that end, Mechoshade committed its own resources to developing fabrics for use in solar roller shades. In the late 1970s, Mechoshade approached Twitchell about manufacturing fabric for Mechoshade's solar roller shades. At that time, [*2]Twitchell had never manufactured fabric for solar roller shades, but it had manufactured fabrics for other purposes and owned commercial looms, as well as other necessary equipment. Mechoshade and Twitchell agreed to co-develop fabric for solar roller shades. Mechoshade invested its time and money, including in excess of $100,000, to help Twitchell develop fabrics of different colors, weaves, and densities. Among other things, Mechoshade funded a university study to analyze the different types of weaves, colors, and densities that could be used with various kinds of glazing. This study resulted in certain developments, which are still incorporated in a large portion of Mechoshade's products today and from which Twitchell also benefitted. In addition, through various marketing and advertising initiatives, Mechoshade built and promoted the solar roller shade market.
After operating pursuant to a "handshake" agreement for a number of years, Twitchell and Mechoshade, both represented by attorneys, negotiated two nearly identical distribution agreements (hereinafter the agreements), one governing North America (hereinafter the North America agreement) and the other governing the rest of the world. Pursuant to the agreements, which were entered into on June 1, 1989, Twitchell agreed to manufacture fabric for Mechoshade on an exclusive basis for use in Mechoshade's solar roller shades. Section 1 of the North America agreement provided that Twitchell appointed Mechoshade as its sole distributor of Twitchell's products in the Window Shading Product Line. In connection therewith, Twitchell granted Mechoshade the right to promote and sell throughout North America the Window Shading Product Line, and Twitchell granted Mechoshade certain rights to use certain trademarks and logos. The Window Shading Product Line was defined as
"[o]perable and fixed interior shading, exterior vertical window shading, and greenhouse shading for use with glazed windows, greenhouses and skylights for the contract, commercial, institutional, residential and hospitality markets. The Window Shading Product Line shall not include shading for operable or fixed exterior awnings, or products made for any use in cars or trucks or for use as exterior fixed screening (collectively, the 'Non-Competing Industries')."
Section 2.2 of the North America agreement provided that the "'[p]atterns, colors, weaves and textures individually or in combination, which are designed, developed and produced by . . . [Twitchell] for . . . [Mechoshade] pursuant to this Agreement shall be exclusive designs for . . . [Mechoshade].'"
Section 11.1 of the agreements contained identical restrictive covenants (hereinafter the restrictive covenants) that provided that in the event of termination of the agreement,
"all weaves, patterns, designs and colors produced by [Twitchell] for [Mechoshade] for the Window Shading Product Line shall remain the exclusive designs of [Mechoshade] and shall not be sold to dealers, manufacturers or distributors in the window shading market; provided, however, that [Twitchell] shall be free to produce and sell new and different designs, weaves, patterns and colors for distribution into the window shading market but shall not offer for sale to the window shading market slightly modified fabrics which are substantially similar to [Mechoshade's] exclusive fabrics." After more than 30 years of working together, in 2018, Mechoshade informed Twitchell that it was terminating the agreements, effective May 31, 2019. By letter dated July 30, 2020, Mechoshade "reminded" Twitchell of its contractual obligations in the restrictive covenants in the agreements.
By summons and complaint, Twitchell commenced this action seeking a declaration that the restrictive covenants in the agreements are "invalid, unlawful and unenforceable, and that Twitchell is not restricted in its manufacture or sale of fabric, or in its component elements of weaves, patterns, designs, colors, or otherwise." As exhibits to the complaint, Twitchell attached, among other things, a copy of the North America agreement, as well as printouts from Mechoshade's website, and printouts from websites of two of Mechoshade's alleged competitors, who are not parties to this action.
Mechoshade interposed an answer with counterclaims. The first counterclaim sought a declaration that (1) the agreements, "in relevant part, remain in full force and effect"; (2) the restrictive covenants contained in the agreements are "enforceable, in whole or in part"; and (3) "Twitchell is precluded from selling the fabrics it actually manufactured for [Mechoshade] in the Window Shading Product Line or any fabrics that are 'substantially similar' thereto to other dealers, manufacturers or distributors in the window shading market." The second counterclaim sought a permanent injunction.
Twitchell did not interpose a reply to the counterclaims. Instead, Twitchell moved pursuant to CPLR 3211(a)(1) and (7) to dismiss Mechoshade's counterclaims, contending that [*3]Mechoshade's counterclaims failed to plead facts supporting that the restrictive covenants in the agreements were enforceable and that Twitchell's documentary evidence established that the restrictive covenants were unenforceable. Mechoshade opposed the motion, contending that Twitchell relied upon materials that did not constitute documentary evidence within the meaning of CPLR 3211(a)(1) and that Mechoshade sufficiently alleged that the restrictive covenants were valid and enforceable in their entirety. Mechoshade also contended that even if the Supreme Court were to ultimately determine that the restrictive covenants were overly broad, the court's power to sever and partially enforce overly broad restrictive covenants warranted denial of Twitchell's motion to dismiss the counterclaims.
In an order entered June 29, 2021, the Supreme Court denied Twitchell's motion. Twitchell appeals. Because Twitchell failed to meet its burden on this motion pursuant to CPLR 3211(a), we affirm.
II. CPLR 3211(a)(1)
A motion to dismiss a counterclaim pursuant to CPLR 3211(a)(1) on the ground that it is barred by documentary evidence may be granted only if the documentary evidence utterly refutes the defendant's factual allegations, "conclusively establishing a defense [to the counterclaim] as a matter of law" (Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326). Thus, on this motion to dismiss the counterclaims, Twitchell bears the burden of demonstrating that the proffered documentary evidence conclusively refutes Mechoshade's factual allegations (see Kolchins v Evolution Mkts., Inc., 31 NY3d 100, 106).
"[N]ot all printed materials constitute documentary evidence under CPLR 3211(a)(1)" (Flushing Sav. Bank, FSB v Siunykalimi, 94 AD3d 807, 808). "[T]o be considered documentary, evidence must be unambiguous and of undisputed authenticity" (Fontanetta v John Doe 1, 73 AD3d 78, 86 [internal quotation marks omitted]; see Minchala v 829 Jefferson, LLC, 177 AD3d 866, 867). "[J]udicial records, as well as documents reflecting out-of-court transactions such as mortgages, deeds, contracts, and any other papers, the contents of which are 'essentially undeniable,' would qualify as 'documentary evidence' in the proper case" (Fontanetta v John Doe 1, 73 AD3d at 84-85; see Minchala v 829 Jefferson, LLC, 177 AD3d at 867).
Here, contrary to Twitchell's contention, the printouts from Mechoshade's website, as well as the printouts from the alleged nonparty competitors' websites, which were attached to the complaint, do not constitute documentary evidence within the meaning of CPLR 3211(a)(1) (see MJ Lilly Assoc., LLC v Ovis Creative, LLC, 221 AD3d 805, 806; Bianco v Law Offs. of Yuri Prakhin, 189 AD3d 1326, 1328; Guido v Orange Regional Med. Ctr., 102 AD3d 828, 830; Granada Condominium III Assn. v Palomino, 78 AD3d 996, 997). Although we acknowledge that printouts from websites may constitute documentary evidence under certain circumstances, in this case, the contents of the website printouts do not so qualify, as they can be controverted by other evidence (see MJ Lilly Assoc., LLC v Ovis Creative, LLC, 221 AD3d at 806; Guido v Orange Regional Med. Ctr., 102 AD3d at 830; Springer v Almontaser, 75 AD3d 539, 540).
By contrast, the North America agreement, which was attached to the complaint, is documentary evidence (see Whitebox Concentrated Convertible Arbitrage Partners, L.P. v Superior Well Servs., Inc., 20 NY3d 59, 63; Bonavita v Government Empls. Ins. Co., 185 AD3d 892, 894). Nevertheless, for the reasons set forth below, we hold that the North America agreement does not utterly refute Mechoshade's factual allegations or conclusively establish a defense to the counterclaims as a matter of law (see Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d at 326).
III. CPLR 3211(a)(7)
On a motion to dismiss a counterclaim pursuant to CPLR 3211(a)(7), a court "must accept as true the facts as alleged" in the counterclaim, accord the defendant "the benefit of every possible favorable inference and determine only whether the facts as alleged fit within any cognizable legal theory" (Whitebox Concentrated Convertible Arbitrage Partners, L.P. v Superior Well Servs., Inc., 20 NY3d at 63 [internal quotation marks omitted]; see Indymac Venture, LLC v Nagessar, 121 AD3d 945, 946). "Where evidentiary material is submitted and considered on a motion pursuant to CPLR 3211(a)(7), and the motion is not converted into one for summary judgment, the question becomes whether the [pleader] has a cause of action, not whether the [pleader] has stated one, and unless it has been shown that a material fact claimed by the [pleader] to be one is not a fact at all, and unless it can be said that no significant dispute exists regarding it, dismissal should not eventuate" (Bonavita v Government Empls. Ins. Co., 185 AD3d at 893 [internal [*4]quotation marks omitted]; see Guggenheimer v Ginzburg, 43 NY2d 268, 275).
A motion pursuant to CPLR 3211(a)(7) to dismiss a counterclaim for a declaratory judgment prior to the service of a reply thereto presents for consideration only the issue of whether the counterclaim for declaratory relief is set forth, not the question of whether the defendant is entitled to a favorable declaration (see Ciaccio v Wright-Ciaccio, 211 AD3d 900, 901; Indymac Venture, LLC v Nagessar, 121 AD3d at 946). Thus, where a counterclaim is sufficient to invoke the court's power to render a declaratory judgment as to the rights and other legal relations of the parties to a justiciable controversy, a motion pursuant to CPLR 3211(a)(7) to dismiss that counterclaim should be denied (see Ciaccio v Wright-Ciaccio, 211 AD3d at 901-902; Minovici v Belkin BV, 109 AD3d 520, 524). However, upon a motion to dismiss a counterclaim for failure to state a cause of action, a court may reach the merits of a properly pleaded counterclaim for a declaratory judgment where no questions of fact are presented by the controversy (see Ciaccio v Wright-Ciaccio, 211 AD3d at 902). Under such circumstances, the motion to dismiss the counterclaim for failure to state a cause of action should be treated as one seeking a declaration in the plaintiff's favor and treated accordingly (see id.; Mutual Aid Assn. of the Paid Fire Dept. of the City of Yonkers, N.Y., Inc. v City of Yonkers, 199 AD3d 815, 818).
In this case, however, many questions of fact remain to be determined (see Guthart v Nassau County, 178 AD3d 777, 779). Thus, for the reasons set forth below, the Supreme Court properly declined to treat Twitchell's motion as a motion for a declaration in its favor at this procedural juncture.
IV. Covenants Not to Compete in Ordinary Commercial Contracts
"Under New York law, the enforceability of a restrictive covenant depends in part upon the nature of the underlying contract" (DAR & Assoc., Inc. v Uniforce Servs., Inc., 37 F Supp 2d 192, 196 [ED NY 1999]). "Restrictive covenants may be enforceable in three types of contacts: (a) contracts for the sale of a business, (b) employment contracts, and (c) ordinary commercial contracts" (Steelite Intl. U.S.A., Inc. v McManus, 2021 WL 1648025, *5, 2021 US Dist LEXIS 80528, *11 [SD NY, Apr. 27, 2021, No. 21-CV-2645 (LAK)]; see DAR & Assoc., Inc. v Uniforce Servs., Inc., 37 F Supp 2d at 196-197; Baker's Aid, a Div. of M. Raubvogel Co., Inc. v Hussmann Foodservice Co., 730 F Supp 1209, 1214 [EDNY 1990]). Restrictive covenants in contracts for the sale of a business, which involve the transfer of goodwill, are enforceable because "a buyer of a business should be permitted to restrict [its] seller's freedom of trade so as to prevent the latter from recapturing and utilizing, by . . . competition, the good will of the very business which [it] transferred for value" (Purchasing Assoc. v Weitz, 13 NY2d 267, 271; see DAR & Assoc., Inc. v Uniforce Servs., Inc., 37 F Supp 2d at 196). By contrast, with employment agreements, as "the element of good will, or its transfer, is not involved and since there are powerful considerations of public policy which militate against sanctioning the loss of a [person's] livelihood, the courts have generally displayed a much stricter attitude with respect to covenants of this type" (Purchasing Assoc. v Weitz, 13 NY2d at 272). In the context of employment agreements, the Court of Appeals holds that a covenant not to compete is reasonable only if it: "(1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public" (BDO Seidman v Hirshberg, 93 NY2d at 388-389).
The parties agree that this case falls into the third category, restrictive covenants in ordinary commercial contracts. As has been recognized by other courts, "New York law does not contain a large body of guidance on the assessment of covenants not to compete" within ordinary commercial contracts (Crye Precision LLC v Bennettsville Print., 755 Fed Appx 34, 37 [2d Cir 2018]). However, we agree with those courts that have analyzed "these types of covenants under a simple rule of reason, balancing the competing public policies in favor of robust competition and freedom to contract" (DAR & Assoc., Inc. v Uniforce Servs., Inc., 37 F Supp 2d at 197; see Express Frgt. Sys. Inc. v YMB Enters. Inc., 623 F Supp 3d 39, 51 [ED NY 2022]; Baker's Aid, a Div. of M. Raubvogel Co., Inc. v Hussmann Foodservice Co., 730 F Supp at 1214; see also Hodge v Sloan, 107 NY 244, 249-250).
Under this rule of reason, courts should consider: "(1) whether the covenant protects a legitimate business interest; (2) the reasonableness of the covenant with respect to geographic scope and temporal duration; and (3) the degree of hardship upon the party against whom the covenant is enforced" (Express Frgt. Sys. Inc. v YMB Enters. Inc., 623 F Supp 3d at 51 [internal quotation marks omitted]; see Steelite Intl. U.S.A., Inc. v McManus, 2021 WL 1648025, *7, 2021 US Dist LEXIS 80528, *16; see also Dynamic Med. Communications v Norwest Trade Printers, 257 [*5]AD2d 524, 525). Although this simple rule of reason analysis is similar to the factors examined in the context of employment contracts (see BDO Seidman v Hirshberg, 93 NY2d at 388), in cases involving restrictive covenants in ordinary commercial contacts, courts should accord more deference to parties' freedom to contract (see Express Frgt. Sys. Inc. v YMB Enters. Inc., 623 F Supp 3d at 51; Steelite Intl. U.S.A., Inc. v McManus, 2021 WL 1648025, *7, 2021 US Dist LEXIS 80528, *16; Mathias v Jacobs, 167 F Supp 2d 606, 612 [SD NY 2001]). Further, "[t]he application of these factors depends entirely on the totality of circumstances" (Express Frgt. Sys. Inc. v YMB Enters. Inc., 623 F Supp 3d at 51 [internal quotation marks omitted]; Crye Precision LLC v Duro Textiles, LLC, 2016 WL 1629343, *5, 2016 US Dist LEXIS 54201, *14 [SD NY Apr. 22, 2016, No. 15cv1681 (DLC)] [internal quotation marks omitted], affd 689 Fed Appx 104 [2d Cir 2017]; see Greenwich Mills Co. v Barrie House Coffee Co., 91 AD2d 398, 401).
Turning to the application of the three factors to this case, we discuss Mechoshade's alleged legitimate business interest first, followed by the alleged degree of hardship upon Twitchell, the party against whom the covenant would be enforced, and then discuss the alleged reasonableness of the covenant's geographic scope and temporal duration.
A. Legitimate Business Interest
Regarding the first factor, for purposes of this CPLR 3211(a) motion, Twitchell has failed to establish that the restrictive covenants in the agreements do not protect Mechoshade's legitimate business interest in preventing unfair competition. "Unfair competition is the misappropriation for commercial advantage of a benefit or property right belonging to another. While it originally was confined to cases of palming off another's goods as one's own, over the years the concept of unfair competition has expanded to encompass a variety of commercial situations" (Marcraft Recreation Corp. v Frances Devlin Co., Inc., 459 F Supp 195, 198 [SD NY 1978] [citations and internal quotation marks omitted]). Nevertheless, the basic question is whether the acts complained of are fair or unfair (see Cigogne, Inc. v Luxury Trading Corp., 13 AD2d 928, 929; Advance 2000, Inc. v Harwick, 2019 WL 6725977, *7, 2019 US Dist LEXIS 213326, *18 [WD NY, Dec. 11, 2019, No. 16-CV-1037S]). "This is necessarily a fact-intensive inquiry," which is not appropriate for a CPLR 3211(a) motion (Advance 2000, Inc. v Harwick, 2019 WL 6725977, *7, 2019 US Dist LEXIS 213326, *18; see Capitaland Heating & Cooling v Capitol Refrig. Co., 134 AD2d 721, 722).
Here, Mechoshade has alleged that it invested its own time, skill, and money in developing fabrics with Twitchell, which pursuant to the agreements, were to "remain the exclusive designs" of Mechoshade, even after the expiration of the agreements. Mechoshade further alleged that the restrictive covenants were included in the agreements to protect its investments in the fabrics in the event Twitchell and Mechoshade ever terminated the agreements. Contrary to Twitchell's contention, for purposes of withstanding this CPLR 3211(a) motion, Mechoshade has sufficiently alleged that it may have a legitimate business interest in the fabrics, even though it only allegedly co-developed them (see Cole Steel Equip. Co. v Art-Lloyd Metal Prods. Corp., 1 AD2d 148, 150; Baker's Aid, a Div. of M. Raubvogel Co., Inc. v Hussmann Foodservice Co., 730 F Supp at 1215 [ED NY 1990]; Marcraft Recreation Corp. v Frances Devlin Co., Inc., 459 F Supp at 198).
Twitchell further contends that Mechoshade's alleged investment in co-developing the fabrics constituted past consideration, which cannot support a contract. However, this issue is raised for the first time on appeal and does not involve a pure question of law, as the issue of adequate consideration for a contract is generally a question of fact (see Daniel Goldreyer, Ltd. v Van de Wetering, 217 AD2d 434, 438). Thus, we do not consider that argument for purposes of this appeal.
Moreover, in light of the procedural posture of this case (see CPLR 3211[a][1], [7]) and the insufficient record, it is premature to determine that the color, style, and design of the allegedly co-developed fabrics are too generic for Mechoshade to have a legitimate business interest in protecting them or that the allegedly co-developed fabrics do not vary in any meaningful way from those offered by competitors. There has been no discovery in this case, no expert testimony or affidavits, or even testimony or affidavits from a person with personal knowledge of the facts. Instead, Twitchell relies upon the printouts from Mechoshade's website and websites from two alleged nonparty competitors, which were attached to the complaint, and invites the court to make a comparison. However, as discussed above, those printouts are not documentary evidence for purposes of CPLR 3211(a)(1). Moreover, as to whether the counterclaims were subject to dismissal [*6]pursuant to CPLR 3211(a)(7), these uncertified printouts, some of which contain images purportedly of some of the subject fabrics and some of which contain images purportedly of nonparty competitors' fabrics, do not constitute the sort of evidentiary material that can indisputably demonstrate that the material facts as alleged in the counterclaims are not facts at all and that no significant dispute exists regarding them (see Guggenheimer v Ginzburg, 43 NY2d at 275; cf. Woss, LLC v 218 Eckford, LLC, 102 AD3d 860, 862).
Accordingly, although we may reach a different determination on a more fully developed record, for purposes of this motion pursuant to CPLR 3211(a), we cannot say that Mechoshade lacks a legitimate business interest in proscribing the unfair competition that may result from Twitchell's sale of fabrics that Twitchell co-developed with Mechoshade to Mechoshade's competitors (see Cole Steel Equip. Co. v Art-Lloyd Metal Prods. Corp., 1 AD2d at 150; Marcraft Recreation Corp. v Frances Devlin Co., Inc., 459 F Supp at 198; see also Baker's Aid, a Div. of M. Raubvogel Co., Inc. v Hussmann Foodservice Co., 730 F Supp at 1215).
Nevertheless, Twitchell contends that even if Mechoshade may have a legitimate business interest with respect to the allegedly co-developed fabrics, Mechoshade does not have a legitimate business interest in preventing Twitchell from selling "new and different designs, weaves, patterns and colors" that were "slightly modified fabrics which are substantially similar to [Mechoshade's] exclusive fabrics" to Mechoshade's competitors, and the inclusion of this language renders the restrictive covenants vague, overly broad, and unreasonable on their face. Twitchell contends that enforcing this language would have the effect of impermissibly prohibiting Twitchell from selling any fabrics at all in the window shade market and that Mechoshade's competitors already sell fabrics that are "substantially similar to" the allegedly co-developed fabrics.
However, for the reasons set forth above, we cannot determine from this record the extent to which Mechoshade's alleged competitors sell fabrics that are "substantially similar" to the allegedly co-developed fabrics. Nor can we determine the extent to which Twitchell would be prohibited from competing at all in the window shade market (see generally Supply Chain Prods., LLC v NCR Corp., 2023 WL 2712503, *10, 2023 US Dist LEXIS 55683, *29 [SD NY, Mar. 30, 2023, No. 19-CV-11376 (ALC) (JLC)] ["A covenant may not merely insulate a party from competition" (internal quotation marks omitted)]. Moreover, although the phrases "slightly modified" and "substantially similar" are not defined in the agreements, we cannot say on this record that this language is necessarily so vague as to render the restrictive covenants overly broad on their face. As Mechoshade correctly points out, courts have been able to interpret and enforce the phrase "substantially similar" in non-compete covenants in contracts (see Brintec Corp. v Akzo, N.V., 129 AD2d 447).
Accordingly, at this procedural juncture, Twitchell's reliance upon Crye Precision LLC v Duro Textiles, LLC (689 Fed Appx 104) and Crye Precision LLC v Bennettsville Print. (755 Fed Appx 34) is misplaced. In these two related cases, the same plaintiffs alleged that each of the defendants breached the terms of their separate agreements to license the plaintiffs' camouflage pattern (see Crye Precision LLC v Bennettsville Print., 755 Fed Appx at 37; Crye Precision LLC v Duro Textiles, LLC, 689 Fed Appx at 106). In Crye Precision LLC v Bennettsville Print. (775 Fed Appx at 37), the license agreement prohibited the defendant, Bennettsville Printing Works, from making any patterns that were "confusingly similar" to the plaintiffs' pattern (internal quotation marks omitted). In Crye Precision LLC v Duro Textiles, LLC (689 Fed Appx at 106), the license agreement prohibited the defendant, Duro Textiles, LLC, from making "any products that [were] similar to" the plaintiffs' pattern (internal quotation marks omitted). In both cases, the Second Circuit held that these provisions were overly broad (see Crye Precision LLC v Bennettsville Print., 755 Fed Appx at 37; Crye Precision LLC v Duro Textiles, LLC, 689 Fed Appx at 106).
However, as Mechoshade correctly points out, Crye Precision LLC v Bennettsville Print. (755 Fed Appx 34) and Crye Precision LLC v Duro Textiles, LLC (689 Fed Appx 104) were decided upon motions for summary judgment, under the Federal Rules of Civil Procedure. As such, the standard for deciding the motions in those cases was considerably less favorable to the nonmoving parties than the standard applicable for this CPLR 3211(a) motion (compare Anderson v Liberty Lobby, Inc., 477 US 242, 257, with EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19; Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d at 326; Guggenheimer v Ginzburg, 43 NY2d at 275; Sokol v Leader, 74 AD3d 1180, 1181). Additionally, these cases clearly had more factually developed records than the instant case (see Crye Precision LLC v Duro Textiles, LLC, 689 Fed [*7]Appx at 106 [citing to expert opinion]).
Thus, in this case, although we acknowledge that the inclusion of "slightly modified fabrics which are substantially similar to [Mechoshade's] exclusive fabrics" in the restrictive covenants may render the restrictive covenants overly broad, on this record, such a determination is premature (see generally Brintec Corp. v Akzo, N.V., 129 AD2d at 448; cf. Crye Precision LLC v Bennettsville Print., 755 Fed Appx at 37; Crye Precision LLC v Duro Textiles, LLC, 689 Fed Appx at 106).
B. Degree of Hardship
Similarly, as to the degree of hardship upon Twitchell, the party against whom the covenant would be enforced, it is not possible to make this determination on this CPLR 3211(a) motion. On their face, the restrictive covenants allow Twitchell to develop new and different designs, weaves, patterns, and colors for distribution within the "window shading market," provided that the fabrics are not "slightly modified fabrics which are substantially similar" to the allegedly co-developed fabrics. In addition, the restrictive covenants also allow Twitchell to sell fabrics covered by the restrictive covenants outside "the window shading market," and the counterclaims allege that Twitchell does sell fabrics outside of the window shading market. As with other aspects of the restrictive covenants, the determination as to the extent to which Twitchell would be harmed by the enforcement of the restrictive covenants must await a more developed record.
C. Reasonableness of Geographic Scope and Temporal Duration
In general, the reasonableness of a covenant not to compete with respect to geographic scope and temporal duration depends upon the facts of each case (see generally Karpinski v Ingrasci, 28 NY2d 45, 49). A covenant not to compete is not necessarily unenforceable merely because it lacks a temporal limitation (see id. at 50; Greenwich Mills Co. v Barrie House Coffee Co., 91 AD2d at 401). Likewise, a covenant not to compete is not necessarily unenforceable merely because it lacks a geographic restriction (see Doelker, Inc. v Kestly, 87 AD2d 763, 764; Cole Steel Equip. Co. v Art-Lloyd Metal Prods. Corp., 1 AD2d 148; SD Protection, Inc. v Del Rio, 498 F Supp 2d 576, 585 [ED NY 2007]).
In this case, however, the restrictive covenants in the agreements lack both geographic and temporal limitations, ostensibly applying indefinitely throughout the world. Under these circumstances, we agree with Twitchell that the unlimited geographic scope combined with the lack of any temporal limitation renders the restrictive covenants overly broad on their face (see Trans-Continental Credit & Collection Corp. v Foti, 270 AD2d 250, 251; Crye Precision LLC v Bennettsville Print., 2017 WL 4325817, *8, 2017 US Dist LEXIS 159072, *21-22 [ED NY Sept. 27, 2017, No. 15-cv-00221 (FB) (RER)], affd 755 Fed Appx 34).
V. The Court's Power to Sever and Grant Partial Enforcement of Overly Broad Restrictive Covenants in Ordinary Commercial Contracts
Nevertheless, as described above, Mechoshade's first counterclaim sought a declaration that the restrictive covenants contained in the agreements are "enforceable, in whole or in part" (emphasis added). On appeal, as it did before the Supreme Court, Mechoshade contends that courts have the power to sever and grant partial enforcement of an overly broad restrictive covenant in an ordinary commercial contract, and it further contends, that the court's power to do so here warrants denial of Twitchell's motion pursuant to CPLR 3211(a). Twitchell, by contrast, contends that the restrictive covenants are not capable of partial enforcement because every aspect of the restrictive covenants is overly broad. On this record, we hold that such a determination is premature and that Twitchell has failed to establish for purposes of its motion pursuant to CPLR 3211(a) that the restrictive covenants are not capable of partial enforcement.
In the context of overly broad restrictive covenants in employment agreements, the Court of Appeals has held that courts possess the power to sever and grant partial enforcement (see Brown & Brown, Inc. v Johnson, 25 NY3d 364, 371; BDO Seidman v Hirshberg, 93 NY2d at 395; Karpinski v Ingrasci, 28 NY2d at 53; see also Trans-Continental Credit & Collection Corp. v Foti, 270 AD2d at 251; Greenwich Mills Co. v Barrie House Coffee Co., 91 AD2d at 401). Where
"the unenforceable portion is not an essential part of the agreed exchange, a court should conduct a case specific analysis, focusing on the conduct of the employer in imposing the terms of the agreement. Under this approach, if the employer demonstrates an absence of overreaching, coercive use of dominant bargaining power, or other anti-competitive misconduct, but has in good faith [*8]sought to protect a legitimate business interest, consistent with reasonable standards of fair dealing, partial enforcement may be justified" (BDO Seidman v Hirshberg, 93 NY2d at 394 [citation omitted]; see Brown & Brown, Inc. v Johnson, 25 NY3d at 371).
Relying upon Court of Appeals precedent from cases involving restrictive covenants in employment agreements, which necessarily require a more rigorous examination than restrictive covenants in ordinary commercial agreements, federal courts applying New York law have recognized the power of courts to sever and grant partial enforcement of restrictive covenants in cases involving ordinary commercial agreements (see Crye Precision LLC v Duro Textiles, LLC, 689 Fed Appx at 107; Baker's Aid, a Div. of M. Raubvogel Co., Inc. v Hussmann Foodservice Co., 730 F Supp at 1214, 1216).
We likewise hold that overly broad restrictive covenants in ordinary commercial agreements may be capable of partial enforcement to the extent necessary to protect a legitimate business interest. However, as with restrictive covenants in employment agreements, "severance of the impermissible portions from the valid portions in order to uphold the covenant to the extent that it is reasonable is not always justified by the circumstances of the particular case" (Greenwich Mills Co. v Barrie House Coffee Co., 91 AD2d at 401; see Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp., 42 NY2d 496, 500; Crye Precision LLC v Bennettsville Print., 755 Fed Appx at 38; Crye Precision LLC v Duro Textiles, LLC, 689 Fed Appx at 107).
Moreover, as with overly broad restrictive covenants in employment agreements, in order to determine whether an overly broad restrictive covenant in an ordinary commercial agreement is capable of partial enforcement, courts should conduct a case specific analysis, which likely requires a more developed record than is available at this stage of the litigation (see BDO Seidman v Hirshberg, 93 NY2d at 394).
Similar to the determination as to whether to grant partial enforcement of an employment agreement, with ordinary commercial contracts, courts should consider whether the unenforceable portion is an essential part of the agreement, whether there was overreaching, whether there was the coercive use of dominant bargaining power, whether there was other anticompetitive misconduct, or whether there was other evidence of bad faith in the inclusion of the restrictive covenant (see Brown & Brown, Inc. v Johnson, 25 NY3d at 371; BDO Seidman v Hirshberg, 93 NY2d at 394).
Here, assuming the facts of the counterclaims to be true for purposes of this CPLR 3211(a) motion, both Twitchell and Mechoshade were sophisticated business entities at the time they entered into the agreements, both parties were represented by attorneys, and the agreements were part of a negotiated arm's-length transaction. There is no allegation that Mechoshade engaged in overreaching or used coercive dominant bargaining power to obtain the restrictive covenants. In any event, this issue would likely be a factual inquiry that could not be resolved on a CPLR 3211(a) motion (see generally Brown & Brown, Inc. v Johnson, 25 NY3d at 372). Moreover, it is not apparent from the face of the agreements that the unlimited temporal duration and geographic scope of the restrictive covenants were essential to the agreements. That determination must await a more fully developed record.
We emphasize that we find only that the unlimited geographic scope combined with the lack of any temporal limitation in the restrictive covenants renders them overly broad on their face (see Trans-Contintental Credit & Collection Corp. v Foti, 270 AD2d at 251). We do not opine as to whether both the geographic scope and temporal duration would need to be limited in order to render the restrictive covenants reasonable or whether either the geographic scope or the temporal duration would need to be limited in order to render the restrictive covenants reasonable. Indeed, we also do not opine as to whether other portions of the restrictive covenants would need to be severed or limited in order to render the restrictive covenants reasonable.
Although the Supreme Court may eventually conclude that the restrictive covenants at issue here cannot be partially enforced without impermissibly rewriting the agreements for the parties (see Crye Precision LLC v Bennettsville Print., 755 Fed Appx at 38), such a determination must await a more developed record (see generally Brown & Brown, Inc. v Johnson, 25 NY3d at 372; Greystone Funding Corp. v Kutner, 121 AD3d 581, 583-584; cf. Crye Precision LLC v Bennettsville Print., 755 Fed Appx at 38). We express no opinion on the merits of such an argument. However, at this very early stage of the action, without any discovery, it is inappropriate to hold that the restrictive covenants are not capable of partial enforcement (see Brown & Brown, Inc. v Johnson, [*9]25 NY3d at 372).
VI. Conclusion
Accordingly, as there are disputed factual issues, the Supreme Court properly declined to treat Twitchell's motion as a motion for a declaration in its favor and properly denied that branch of Twitchell's motion which was pursuant to CPLR 3211(a)(1) and (7) to dismiss the counterclaim for a declaratory judgment. Further, the court properly denied that branch of Twitchell's motion which was pursuant to CPLR 3211(a)(1) and (7) to dismiss the counterclaim for a permanent injunction, as the documentary evidence did not utterly refute the allegations in the counterclaim or establish a defense to the counterclaim as a matter of law (see id. § 3211[a][1]), nor did Twitchell demonstrate that Mechoshade does not have a cause of action on the counterclaim (see id. § 3211[a][7]; Guggenheimer v Ginzburg, 43 NY2d at 275).
In light of the foregoing, the order is affirmed.
MILLER, GENOVESI and DOWLING, JJ., concur.
ORDERED that the order is affirmed, with costs.
ENTER:
Darrell M. Joseph
Clerk of the Court